CLARENCE VARIN *vs.* LYMANSVILLE COMPANY.

JULY 22, 1958.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

170

PAOLINO, J. This petition for a writ of certiorari was brought by the respondent employer seeking to quash the record of certain decrees entered by the workmen's compensation commission in the case of Clarence Varin v. Lymansville Company, W.C.C. No. 5725. The writ issued and pursuant thereto the pertinent records have been certified to this court. Because of the exceptional circumstances in this case we granted the respondent's motion to stay the decree of the commission entered on April 11, 1958 in that case until the determination of the instant petition. See *Girard* v. *United States Rubber Co.*, 84 R. I. 230, 122 A.2d 747.

The employee was injured on January 7, 1953 while in the employ of respondent. On January 29, 1954 he filed an original petition for compensation with the director of labor under the act as it then provided. Thereafter, in accordance with the provisions of public laws 1954, chapter 3297, Sec. 4, the case was transferred to the workmen's compensation commission where it was numbered W.C.C. No.

545. In the original petition the employee alleged in part that he had sustained an injury to his back and a ruptured intervertebral disc.

After a hearing on said petition, the trial commissioner entered a decree on December 3, 1954. The pertinent findings of fact therein are that the employee "sustained an injury arising out of and in the course of his employment, and referable thereto; and that the injury was a low back strain, or a strain of the muscles and ligaments in the lumbo-sacral area." The decree also contained findings that he was totally disabled as a result of his injury from October 26 to December 23, 1953 and from May 20 to July 7, 1954, both inclusive, but that he was not disabled as of November 10, 1954. The decree awarded him compensation and his medical and hospital expenses in accordance with such findings.

The employee thereupon appealed to the full commission which, after hearing the same, entered a final decree on March 18, 1955 affirming the decree of the single commissioner. From such final decree the employee claimed an appeal to this court. This appeal, together with his appeals from two other decrees entered by the full commission and which are not pertinent to the instant issues, was denied and dismissed, and the decrees appealed from were affirmed by us in *Varin* v. *Lymansville Co.,* 87 R. I. 463.

While the above-mentioned appeals were pending in this court, and before a determination thereof, the employee in June 1957 filed three other petitions with the workmen's compensation commission, namely: (1) W.C.C. No. 5793, which was a petition to amend the decree in W.C.C. No. 545; (2) W.C.C. No. 5792, which was an original petition based upon an injury alleged to have resulted from an industrial accident occurring on or about January 7, 1953; and (3) W.C.C. No. 5725, which is a petition to review the final decree in W.C.C. No. 545. This is the decree affirmed by this court in *Varin* v. *Lymansville Co., supra.* These three

petitions were tried together before the trial commissioner, and after hearing thereon his decrees denying and dismissing the petition to amend and petitioner's second original petition were, on the appeals of the employee, affirmed by the full commission by final decrees entered on April 11, 1958.

However, the employee's petition to review the decree entered in W.C.C. No. 545 on the ground that his earning capacity had decreased was granted by the trial commissioner, and, on the employer's appeal from such decree, the same was affirmed by the full commission by a final decree entered on April 11, 1958. The respondent employer thereupon filed the instant petition for a writ of certiorari seeking to quash the final decree entered in W.C.C. No. 5725 on the grounds that such decree is illegal, unlawful and void.

At the hearing on the petition to review, the employee testified in substance that between December 4, 1954 and March 26, 1956 the condition of his back got worse as time went on; that on March 26, 1956 he visited Dr. Donald F. Larkin under whose care he remained until the time of the hearing; that in the early part of September 1956 he became completely crippled; that the condition of his lower back and the pain were unbearable; that he was hospitalized on Dr. Larkin's advice on September 6, 1956; that he was operated on his lower back on September 13; and that he was released from the hospital on September 19, 1956. He also testified that he had not been physically able to work from the time of his discharge from the hospital to the time of the hearing before the commission; and that since the operation he has experienced a lot of pain in his lower back and numbness and pain in his right leg.

Doctor Larkin, a specialist in orthopedic surgery, was called as a witness by the employee. He testified that he first examined him on March 26, 1956; that after taking an extensive history and making a physical examination he

concluded that the employee was suffering from a ruptured intervertebral disc; that on his advice he was hospitalized and underwent a myelogram in the early part of September 1956; that he operated on the employee on September 13, 1956; that his previous diagnosis was confirmed by the operation; and that he found he had a protrusion in the posterior back due to dislocation on the right side between the fourth and fifth lumbar vertebrae.

Doctor Larkin also testified that the employee was still under his care; that in his opinion he was not able to do any work whatsoever for the period beginning March 26, 1956 and ending August 12, 1957; and that thereafter his condition improved and, although some residuals from the back injury remained, he thought he was able to do light work.

With respect to the question of causal connection between the ruptured disc and his incapacity for work at that time and his accident on January 7, 1953, Dr. Larkin testified as follows: "In view of the history of the accident as given to me, which allegedly occurred on January 7, 1953, and also in view of the negative past history and the denial of any interval injuries I feel that the disk which I found at the time of surgery must have occurred as a result of the injury which the patient described in the history."

Under cross-examination Dr. Larkin testified that a ruptured intervertebral disc is not a muscle strain or a low back strain; that with regard to the question of whether the ruptured intervertebral disc existed from the date of the accident on January 7, 1953, it was his opinion that "the accident on January 7, 1953, I think started the process so I can't say that it existed as such throughout that entire period of time, but I think that the disk was injured *at the time of the injury* which led to degeneration of the disk and subsequent protrusion or rupture." (italics ours) He further testified in substance that having been originally

injured in the fall of January 7, 1953 the process of degeneration set in in the disc and that what followed was a natural development without further trauma.

The employer presented no testimony in rebuttal of Dr. Larkin's testimony. However, it offered in evidence the transcript of the testimony and certified copies of the first original petition and of the decisions and decrees of the trial commissioner and the full commission in W.C.C. No. 545. Such evidence was offered to support its contention that on a petition for review the commission is restricted to a review of the actual injuries described in the decree which is the subject matter of such petition.

On the basis of this record the full commission affirmed the findings of fact and the orders of the trial commissioner. In its decision it stated: "It seems clear to us, therefore, that the petitioner's incapacity for work beginning as of March 26, 1956, the date that he was first examined by Dr. Larkin, was due to a back condition diagnosed as a ruptured intervertebral disc. It seems clear that such back condition was directly due to the injury sustained on January 7, 1953, and described in the earlier decree in W.C.C. No. 545. * * * the decree which is being reviewed states 'sustained an *injury* arising out of and in the course of the employment, connected therewith and referable thereto.' It is true that the decree also goes on to describe the exact nature of the injury. We are satisfied that the petitioner did sustain a compensable 'injury' and that his incapacity for work subsequent to March 26, 1956 was due to the effects of such injury regardless of its medical terminology. It appears to us that the respondent overlooks the most important issue in the case, namely: Was the petitioner incapacitated for work as a result of the effects or consequences of the injury sustained on January 7, 1953? As stated above, it is our opinion that the evidence clearly preponderates in favor of an affirmative answer."

General laws 1956, §28-35-45, provides in part as follows: "Relief on such review shall not be denied an employee or granted an employer or his insurer on the grounds that the employee is incapacitated by an injury or disease which is different from the one for which said employee was paid compensation if the injury or disease incapacitating the employee results from *an injury or disease* for which employee was paid compensation." (italics ours)

In our opinion, on a petition to review the commission has jurisdiction under the provisions of §28-35-45 to review incapacity arising not only from the actual injury or disease described in the decree which is the subject matter of the petition for review, but also to grant relief in cases where the incapacity for work is due to an injury or disease resulting from, growing out of, or caused by the *injury or disease* for which the employee was paid compensation.

In the instant case the commission found that the employee's incapacity for work beginning as of March 26, 1956 was due to a back condition diagnosed as a ruptured intervertebral disc and that such condition was directly due to the injury sustained on January 7, 1953 and described in the earlier decree in W.C.C. No. 545. It thus affirmed the findings of the trial commissioner that the employee had proven by a fair preponderance of the evidence that his incapacity for work returned due to the injuries set out in the decree under review, and that because of the effects of such injuries he was incapacitated for the periods stated in the decree of the trial commissioner.

After carefully examining the record and transcript, we are not convinced that such findings of fact are supported by the testimony of Dr. Larkin. The finding of fact contained in the decree in W.C.C. No. 545, which was affirmed by this court on June 23, 1958, holding that on the night of January 7-8, 1953 the employee sustained an injury arising out of and in the course of his employment and referable thereto and "that the injury was a low back strain, or

a strain of the muscles and ligaments in the lumbo-sacral area" is res judicata. However, such finding is res judicata only insofar as it relates to the nature of the injury found to exist at the time of the accident and at the time of the hearing and decree in W.C.C. No. 545. *Di Vona* v. *Haverhill Shoe Novelty Co.*, 85 R. I. 122, 127 A.2d 503.

After careful consideration we are not able to interpret with reasonable certainty the meaning of Dr. Larkin's testimony relating to causation. If his testimony means that the condition which he found at the time of surgery resulted from, flowed out of, or was caused by the low back strain or a strain of the muscles and ligaments in the lumbosacral area, it would be our opinion that the findings of the commission in W.C.C. No. 5725 are supported by the evidence and would be controlled by the provisions of §28-35-45.

On the other hand if his testimony means that the ruptured disc which he testified he found to exist at the time of surgery flowed out of, resulted from, or was caused by the *accident* of January 7-8, 1953, we would then have to conclude that he was referring to a second injury caused by the same accident of January 7-8, 1953. If the latter is true the provisions of §28-35-45 would not apply and the employee's remedy would be an original petition based on such new injury. See the following cases: *Day* v. *Almac's Inc.*, 79 R. I. 357; *Stillwater Worsted Mills, Inc.* v. *Mehegan*, 80 R. I. 449; *Macedo* v. *Atlantic Rayon Corp.*, 81 R. I. 339.

In the circumstances we deem it unnecessary to consider the other contentions of the parties. It is our opinion that the commission erred. However, we believe that justice requires that we remand the cause to the workmen's compensation commission for further proceedings so that the parties may be afforded an opportunity to present further evidence to clarify the pertinent testimony of Dr. Larkin relating to the question of causal relationship between the injuries described in the decree in W.C.C. No. 545 and the

ruptured disc; to make findings of fact with reference thereto; and if causal relationship is found to exist, the time at which the ruptured disc came into existence; and to enter a new decree based on such findings of fact together with other findings heretofore made. As was said in the *Stillwater Worsted Mills, Inc.* case, *supra*: "It is not within the province of this court to make such findings."

That portion of the record in W.C.C. No. 5725 embracing the decisions and decrees of the trial commissioner and of the full commission is quashed, without prejudice, however, to the right of the parties to reopen the case and to further interrogate Dr. Donald F. Larkin for the purpose of clarifying his testimony so that the trial commissioner may make a new finding of causation based on such clarified testimony. The cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Edward I. Friedman, Vincent J. Chisholm, Sidney Wexler,* for Clarence Varin.

*Boss, Conlan, Keenan, Bulman & Rice, Francis W. Conlan,* for Lymansville Company.