EDGAR CHARRON *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

NOVEMBER 28, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is an employee's petition for specific compensation in accordance with the provisions of the workmen's compensation act. It also seeks to have respondent furnish surgical appliances to the petitioner. The case is before us on the respondent's appeal from a final decree of the workmen's compensation commission affirming the decree of a single commissioner awarding specific compensation for the permanent loss of the use of both legs and ordering the respondent to furnish surgical appliances and to pay medical and witness fees.

The record discloses that on August 24, 1951, petitioner sustained a compensable injury arising out of and in the course of his employment with Carleton P. Brown et al., d.b.a. W. B. Brown & Sons, and on September 11 of that year entered into a preliminary agreement with his employers, respondent's insured, by the terms of which petitioner was awarded compensation for total incapacity until further order.

It further appears from the record that after a hearing on a petition to review, a final decree was entered on November 26, 1954, adjudging petitioner to be totally incapacitated by reason of multiple sclerosis resulting from the compensable injury of August 24, 1951. This decree was not put in evidence by petitioner at the hearing on the instant petition. The respondent contends that its inclusion in the record of the case was improper and furnishes no basis of proof that petitioner's claim for specific compensation relates to the injury of August 24, 1951. We are of the opinion that there is no merit in this contention since respondent conceded at the hearing that petitioner was receiving compensation for total incapacity on the basis of the 1954 decree. Moreover the single commissioner would be warranted in taking judicial cognizance of a commission decree to which reference was made by all parties throughout the hearing.

The instant petition for specific compensation and surgical appliances was filed on June 27, 1960 and hearing thereon was commenced November 3 of that year. The petitioner testified that he had been required to use Canadian crutches, so called, in order to ambulate at all and had been using them for twenty or twenty-one months. These crutches are devices which permit the weight of the body to be supported by the arms, which in turn supply the motive power. He further testified that he had been going to the multiple sclerosis clinic of the Rhode Island Hospital for treatment; that prior to using Canadian crutches it had been necessary to use long wooden crutches; that he had changed because of increasing difficulty in ambulating; that if he attempted to walk without his present crutches he was apt to fall and had fallen; that his condition was getting progressively worse; and that he had been told he would sooner or later be forced to resort to a wheel chair.

Doctor Thomas L. Greason, a specialist in neurology and psychiatry called by petitioner, stated that he had examined

him on June 3, 1960. Questioned in direct examination as to whether petitioner had any use of his legs Dr. Greason replied, "I can't put it in terms of absolute percent, but for all practical purposes I would say they are useless and if you have to put it in percent it certainly is in the ninety percent bracket, and probably closer to ninety-nine percent than ninety percent." He also gave it as his opinion that petitioner's condition would not improve.

On cross-examination Dr. Greason testified that he was not familiar with the legal definition, but from a medical point of view petitioner's legs were "useless." Again in cross-examination he was asked if the legs were of some use and replied, "Of some use, yes."

Doctor Wilfred Pickles, a specialist in neurosurgery called by respondent, testified that he had examined petitioner on July 7, 18 and 25, 1960. Upon being asked in direct examination, "Are the legs good for anything apart from earning a living?" Dr. Pickles replied, "Well, they are very little good. You can't say that they are, if you are going to define useless, not as I do here, but useless from a dictionary standpoint, or the way we use the word useless, that is without use, then you can't say they are quite useless because he is able to ambulate very poorly, but he can get about a little."

In cross-examination Dr. Pickles was asked if petitioner could stand without the use of his Canadian crutches. The doctor replied that he did not know and could give no opinion. Thereupon counsel for petitioner suggested that Dr. Pickles attempt to determine whether petitioner could do so or not, stating, "I'd like to have him tested to see if he can stand without his crutches." It appears from the transcript of the proceedings that with the doctor's assistance petitioner rose to his feet and remained standing unaided. The doctor, resuming his testimony, commented, "Your question, I believe, was could he stand without the crutches and he was able to stand without the crutches." He added

that petitioner was not without strength in his legs, but that the ability to control it was very poor.

The record further discloses that, at the request of the single commissioner, Dr. Herman Kabat, a specialist in multiple sclerosis, conducted an impartial examination of petitioner on November 11, 1960. In his report to the commissioner, Dr. Kabat evaluated petitioner's condition as follows:

> "The course of the multiple sclerosis has been steadily progressive without remission since the onset. One can state with a reasonable degree of medical certainty that the disease will continue to progress and that he will not have a remission of the multiple sclerosis now or in the future.
>
> "Both of this patient's legs are permanently useless because of the severe incoordination which is technically termed cerebellar ataxia, resulting from the multiple sclerosis. His legs are not stiff to any great extent and the weakness is not marked, but the severe incoordination is even more disabling, so as to render his legs useless in walking and any other usual activity."

When examined by respondent, however, Dr. Kabat modified his opinion as to the use or lack thereof which petitioner made of his legs. Asked specifically if they were without use, the doctor replied, "It's a question of how you define that, they are not without use but the use is extremely limited and deficient." He acknowledged that petitioner when sitting could cross one leg over the other; that he could stand without crutches; and that some use still remained with relation to standing, walking and getting about.

The single commissioner made the following findings of fact:

> "The petitioner's right leg and the petitioner's left leg are now permanently useless.
>
> "The permanent loss of use of both of petitioner's legs is caused by, or flows from, the injury sustained

by the petitioner on August 24, 1951, which injury is the subject of a preliminary agreement between the parties dated September 11, 1951 as amended by a final decree of this commission dated November 26, 1954."

Thereafter a decree was entered containing the findings of fact and ordering respondent:

"1. Commencing on the date the decree in this case becomes final, and continuing thereafter for a period of three hundred (300) weeks, the respondent is ordered to pay to the petitioner, in addition to and concurrently with all other compensation, the sum of Forty ($40.00) dollars per week, said sum being Twenty ($20.00) dollars per week for the permanent loss of use of petitioner's right leg and Twenty ($20.00) dollars per week for the permanent loss of use of petitioner's left leg.

"2. The respondent is ordered to furnish to the petitioner surgical appliances, etc. in accordance with the workmen's compensation act.

"3. The respondent is also ordered to pay fees for testimony of expert witnesses as follows:

| | |
|---|---|
| Dr. Thomas L. Greason | $35.00 |
| Dr. Herman Kabat | $35.00 |

"4. The respondent is also ordered to pay for the impartial examination by Dr. Herman Kabat."

In its reasons of appeal respondent has assigned nine grounds of error, but we consider it necessary to consider only the first three. They are substantially that the findings of fact made by the single commissioner are not supported by legal evidence, are contrary to the law, and that the evidence adduced at the hearing fails to establish that petitioner's legs, or either of them, are permanently useless within the meaning of G. L. 1938, chap. 300, art. II, §12, as amended by P. L. 1947, chap. 1941.

In *Steele* v. *Darlington Fabrics Corp.*, 78 R. I. 272, this court defined the word "useless" as employed by the legislature in G. L. 1938, chap. 300, *supra.* The pertinent language of that chapter read as follows: "Where any bodily member or portion thereof has been rendered stiff so as to

be useless, compensation in accordance with the above schedules shall be paid as if the member or portion thereof had been severed completely."

In the *Steele* case this court stated at page 276:

"Bearing in mind as we must that the provision of our statute for specific compensation for the loss of use of a member is not limited to compensation for incapacity but is in the nature of damages for such loss and originally was solely for loss by severance, we are constrained not to place an interpretation on the legislative language which would give such damages in too liberal a fashion. The statute plainly states that the stiffness of the member must render it 'useless,' not 'useless for all practical purposes,' and not useless in the sense that the *normal* use has been entirely taken away. We take it 'useless' was used in the sense that, from a functional aspect, the body is no better off with the member than it would be if the member had been severed. If it is stiff to an extent that some useful function still inheres in it, even though it be very limited, we cannot reasonably say that it is useless within the fair intendment of the statute. Merely because the functional use is minor or subnormal would not be sufficient for the court to disregard the plain meaning of the word 'useless' in the context of the statute."

The amendment of P. L. 1947, chap. 1941, which is the applicable law, substituted "permanently stiff so as to be useless" or "permanently useless" for the language which was construed in *Steele* v. *Darlington Fabrics Corp., supra.* We do not perceive, however, that the substituted phrase in any wise affects the meaning of the word "useless" which was given to it by this court in that case. Although the eminent medical witnesses were unanimous in their opinions that both of petitioner's legs are so impaired as to be of slight if any normal use, such impairment is insufficient to bring petitioner's claim within the meaning of P. L. 1947, chap. 1941. It is our opinion, therefore, that the rule as laid down in the *Steele* case is controlling in the instant proceedings. The modification of the testimony given by

the medical witnesses had the effect of denying to their evidence that legality which it was required to have before the findings of fact made by the single commissioner could be supported.

Applying the definition of "useless" as heretofore considered, we are of the opinion that respondent's first three reasons of appeal must be sustained. However, although there was no legal evidence to support the findings of the single commissioner on which he entered his order of specific compensation, the record, in our opinion, does establish the right of petitioner to require respondent to furnish those surgical appliances referred to in the decree of the single commissioner as well as to reimburse petitioner for moneys previously expended in the purchase of such appliances. They are in the nature of compensation as distinguished from damages. P. L. 1947, chap. 1832.

Likewise the orders contained in the decree relative to the payment of witnesses and medical fees were within the authority of the trial commissioner since they were incidental to a determination of the respondent's rights as well as those of the petitioner.

The respondent's appeal is sustained in part, the decree appealed from is reversed to the extent indicated above, otherwise it is affirmed, and the cause is remanded to the workmen's compensation commission with directions to modify its decree in accordance with this opinion.

*Edward I. Friedman, Howard I. Lipsey,* for petitioner.

*Worrell and Hodge, Lee A. Worrell,* for respondent.