251 A.2d 403.

MAURICE J. THOMPSON *vs.* COATS & CLARK, INC.

MARCH 10, 1969.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an employee's petition to review a compensation agreement, predicated on the employee's allegation that his incapacity for work had increased or returned. After a hearing thereon said petition was denied and dismissed by a single commissioner on the ground that said petition had not been brought within ten years of the last payment of compensation, as required by G. L. 1956, 28-35-45.[1]

---

[1]The material provision of this section reads as follows:

"At any time after the date of the approval of any agreement or at any time after the date of the entry of any decree concerning compensation, and if compensation has ceased thereunder, within ten (10) years thereafter, any agreement, award, order, finding, or decree may be from

From the decree accordingly entered, petitioner seasonably appealed to the full commission which, after an independent examination of the record, affirmed the decree of the single commissioner. From that decree, petitioner seasonably appealed to this court.

The record establishes that on August 15, 1952, petitioner, while in the employ of respondent, sustained a work-connected injury to his right leg which injury resulted in amputation of the leg at mid-thigh. Subsequently, September 22, 1952, a preliminary agreement was approved by the director of labor, pursuant to the provisions of now §28-35-3. It provided for weekly compensation benefits for total disability based on an average weekly wage of $53.40 commencing August 18, 1952; for reasonable expenses of hospitalization and medical services, as well as for specific compensation of $20 weekly for 255 weeks, as provided in the then applicable statute, G. L. 1938, chap. 300, art. II, sec. 12(b) as amended.

The record further establishes that petitioner continued to receive weekly compensation for total incapacity until September 14, 1953, at which time he returned to work for respondent. He thereafter received weekly compensation for partial incapacity until November 27, 1955, when his weekly earnings became equal to or in excess of his average weekly wage at the time of the injury. Thereafter, no weekly indemnity payments were made for either total or partial incapacity, but petitioner continued to work for respondent until or about July 15, 1965, when respondent closed its plant.

Although no weekly payments for total or partial in-

time to time reviewed by the workmen's compensation commission, upon its own motion or upon a petition of either party upon forms prescribed and furnished by the commission, after due notice to the interested parties, upon the ground that the incapacity of the injured employee has diminished, ended, increased or returned, or that the weekly compensation payments have been based upon an erroneous average weekly wage."

capacity were made after November 27, 1955, petitioner continued to receive $20 weekly for specific compensation through July 5, 1957, when the 255 weeks of such compensation ended. On July 8, 1957, a suspension agreement and settlement receipt were signed. Thereafter although there were no weekly payments made for either indemnity or specific compensation, respondent continued to furnish petitioner with medical expenses incurred in connection with the wearing of an artificial leg, or repairs thereto. The last such payment was on March 22, 1965, when respondent paid $775 to the Rhode Island Artificial Limb Company for a new artificial leg.

Thereafter, apparently in 1967, this new artificial limb required certain stated adjustments which were made by Rhode Island Artificial Limb Company at a cost of $139. In November 1967, said company billed respondent for the $139, but the bill was returned, respondent declining to pay. Moreover, still further adjustments were indicated as being necessary to give petitioner a serviceable fit. These latter adjustments would call for a new socket and other parts, but such adjustments were not made.

Meanwhile, the instant petition to review had been filed April 18, 1967. It originally sought only weekly compensation benefits on the ground that petitioner's incapacity for work had increased or returned. When the case came on to be heard before a single commissioner, February 9, 1968, however, said single commissioner permitted two amendments. They sought to hold respondent liable for the $139 for the adjustments already made as well as for the additional adjustments heretofore mentioned and permission to exceed the legal maximum for medical expenses.

At the hearing on the petition, Albert L. Teoli, the prosthesis manufacturer, who did business under the firm name of Rhode Island Artificial Limb Company, testified in detail as to the work done which cost $139, as well as to that

which remained to be done. He testified further as to why all such work was necessary to give petitioner full beneficial use of the artificial leg. Additionally, he testified that $139 was reasonable for the work already performed and the reasonable cost of future work would be $225.

Although directing the major portion of his testimony to an alleged incapacity for work, petitioner also testified regarding expenses incurred and to be incurred in connection with repairs and adjustments to his artificial leg. He explained that while the prosthesis, being a suction or contour type, fit properly when purchased several years earlier, it now required a new socket without which control was limited.

His testimony on the issue of incapacity for work established that since the job with respondent had terminated in July 1965, petitioner had not worked except for a seven-month period for Goodwill Industries. This was preceded by a period of vocational rehabilitation training. He stated that when collecting unemployment compensation, he received several referrals to other employers but was unsuccessful in obtaining work. The petitioner attributed this lack of success to his condition, but also frankly stated that he wasn't sure of this, saying, "Actually, I don't know if it's the injury or not."

In reaching his decision, the single commissioner, noting petitioner's steady employment from 1953 to 1965, during the last ten years of which the weekly earnings exceeded the average weekly wage at the time of the injury, and commenting on petitioner's ability to get around, concluded that petitioner was able to do work at which he could earn more than his average weekly wage of $53.40, if actually interested in obtaining work. On this issue, the single commissioner found as a fact that petitioner had failed to prove any incapacity for work that would entitle him to weekly indemnity benefits.

Affirmatively, he found as facts that petitioner was in need of further medical and related services to cure, rehabilitate or relieve him from the effects of his injury; that the adjustments to the prosthesis costing $139 were likewise necessary and the expense fair and reasonable.

However, he also found that the petition having been brought April 18, 1967, was barred by §28-35-45 (see footnote 1) because more than ten years had passed since the last payment of weekly compensation, such last payment for partial incapacity having been made November 27, 1955.

A decree embodying these findings and orders was entered and petitioner appealed to the full commission. He gave as reasons therefor that the findings of fact on petitioner's capacity for work and the time period within which the petition was filed were against the law, the evidence and the weight thereof and that the order denying and dismissing the petition was against the law.

The full commission affirmed the findings and order contained in the single commissioner's decree and accordingly entered a final decree, relying on *Brothers* v. *Cassedy, Inc.*, 101 R. I. 307, 222 A.2d 363.

In that case, the last weekly compensation payment was made July 18, 1954. On September 16, 1964, however, the employer reimbursed the employee in the sum of $30 for medical expenses. Subsequently, March 24, 1965, the employee brought a petition to review. It was denied and dismissed by the full commission on the ground that it had not been brought within ten years of the July 18, 1954, payment of weekly compensation for total disability.

Public Laws 1954, chap. 3297, now G. L. 1956, §28-35-45, had become effective July 1, 1954, some seventeen days prior to the July 18 payment of weekly compensation. In his appeal from the final dercee in that case, the employee conceded that his petition to review would have been

barred by the 1954 amendment except for the September 16, 1964 reimbursement of $30 on which fact employee made two contentions.

They were first, that this September 16, 1964 payment for medical expenses revived the employer's obligation and that a payment for medical expenses was a payment of compensation within the meaning of now §28-35-45. We rejected the employee's first contention saying at 310, "In short, we are of the opinion that with the running of the statutory term of ten years the liability of the employer under the decree or agreement terminates. Consequently, there is thereafter no liability for the employee to enforce by an invocation of the remedy set out in the statute."

Having reached this conclusion, we declined to pass on the employee's threshold proposition; namely, that the payment of medical expenses was a payment of compensation on which a petition to review could rest. Obviously, it would have served no useful purpose to do otherwise.

In the instant appeal, petitioner contends, as he did before the full commission, albeit unsuccessfully, that on the facts of the case at bar §28-35-45 is not applicable or, if applicable, the instant petition to review is not barred by the provisions of the cited statute.

In support of his contention as to non-applicability of the 1954 amendment on which the *Brothers* case turned, petitioner cites *Mattos* v. *Sayles Finishing Plants, Inc.,* 93 R. I. 514, 177 A.2d 189. There, a preliminary agreement was approved by the director of labor on March 9, 1950, by reason of an injury sustained February 15, 1950. The last payment of weekly compensation benefits was made for total incapacity on April 25 of the same year. Thereafter, on February 17, 1961, the employee brought a petition to review. It was dismissed by the full commission on the ground that more than ten years had passed since the last

payment of compensation and, under §28-35-45, the petition was barred.

We reversed, holding that since at the time the preliminary agreement was approved, the employee had better than nineteen years within which to bring a petition to review,[2] it was not unreasonable to construe the 1954 amendment as giving one who had fourteen years remaining within which to bring a petition to review when the 1954 amendment became effective, the benefit of the ten-year period provided in P. L. 1954, chap. 3297. The petition to review having been brought in 1961, some three years before ten years would have passed, we concluded that the petition was timely brought.

In the instant case petitioner stresses compensation for partial disability had been paid under a preliminary agreement which also had been approved prior to the adoption of P. L. 1954, chap. 3297. Hence, he argues, the bringing of the instant petition was likewise governed by G. L. 1938, chap. 300, art. III, sec. 13, as amended. (See footnote 2).

Specifically, petitioner contends, that under the preliminary agreement approved by the director of labor on September 22, 1952, he had 800 weeks within which to bring a petition to review. The single commissioner noted, parenthetically, that this period would terminate January 2, 1968.

---

[2]The precursor to P. L. 1954, chap. 3297, now G. L. 1956, §28-35-45, was G. L. 1938, chap. 300, art. III, sec. 13, as amended by P. L. 1949, chap. 2274. It authorized the bringing of a petition to review at any time within the maximum period for which weekly compensation was payable, namely 1000 weeks for total and 800 weeks for partial. The preliminary agreement awarding *Mattos* compensation for total disability having been approved March 9, 1950, a petition to review could have been brought, under the then applicable statute as late as April of 1969. Since the petition was brought in February 1961, and within ten years of the adoption of P L. 1954, chap. 3297, we held that the petition was not barred by the provisions of the 1954 amendment.

The full commission considered and rejected this contention on the theory that since *Brothers* v. *Cassedy, supra,* was decided more than four years after *Mattos* v. *Sayles Finishing, supra,* the latter case had been overruled at least sub silentio. Because of the view we take of petitioner's third contention on the jurisdictional question, namely, that payments of medical expenses are payments of compensation within the meaning of §28-35-45, we elect to pretermit consideration of the full commission's reliance on *Brothers.* However, in connection therewith, we deem it advisable to point out that in the *Brothers* case, the employee conceded that the 1954 amendment was applicable and the question of whether *Brothers* was entitled to invoke the provisions of G. L. 1938, chap. 300, art. III, sec. 13, was not raised, hence not considered by this court. In such circumstance, it does not necessarily follow that the *Brothers* case overruled *Mattos,* even sub silentio.

But, petitioner next contends, even if he is held to the ten-year period after the last payment of compensation, specific compensation was paid until July 5, 1957, and the instant petition filed April 18, 1967, was within ten years of the last payment of compensation. The full commission likewise rejected this contention on their conclusion that payments of specific injury compensation do not qualify as compensation payments within the meaning of §28-35-45. They reasoned that since this court has repeatedly referred to specific compensation as "damages,"[3] an award thereof is fixed at the time either a preliminary agreement is approved or a decree entered. That the amount if made payable in weekly installments by direction of the legislature does not, they concluded, convert such payments from an

---

[3]*Steele* v. *Darlington Fabrics Corp.,* 78 R. I. 272, 81 A.2d 424; *Charron* v. *Liberty Mutual Ins. Co.,* 93 R. I. 352, 175 A.2d 721; *Sherry* v. *Crescent Co., Inc.,* 101 R. I. 703, 226 A.2d 819.

award of damages into compensation payments within the meaning of §28-35-45.

Again, for the reason that we find merit in petitioner's third contention on the jurisdictional question, we express no opinion on the full commission's views of payment for specific compensation as they relate to the last cited section, preferring to leave that to a later determination in a case where such issue is the ultimate issue.

We turn then to petitioner's third contention; namely, that the payment of medical expenses within ten years prior to the bringing of a petition to review qualifies as a payment of "compensation" as that word is used in the establishing of a condition precedent to the bringing of a petition to review under §28-35-45. (See footnote 1) If so, petitioner argues, the instant petition was seasonably filed since it is undisputed, and the commission so found, that respondent continued to pay medical expenses at diverse times after the last payment of compensation for partial incapacity in November 1955, and indeed made medical payments as late as 1965.

The full commission considered and rejected this contention, stating, " 'Compensation' is a word of art and cannot be said to be synonymous with 'medical charge or expense.' " So stating, they referred to their holding in *Brothers* v. *Cassedy, supra,* wherein they rejected the employee's contention that medical expenses and charges should be equated with "compensation." They concluded, "If there is to be an exception to *Brothers* on the issue of medical and related expenses, the Supreme Court and not this Commission ought to do it."

As previously noted, when that question was raised in this court in the *Brothers* case, we declined to pass on the question for the reason that the medical expenses therein relied upon had been paid after the ten-year period had elapsed. Here, however, the payments relied on, particu-

larly $775 paid March 22, 1965, were well within ten years next succeeding November 27, 1955, the date on which petitioner last received a payment for partial incapacity. Thus, the factual distinction between the instant case and *Brothers* is readily apparent. General Laws 1956, §28-33-4 provides in pertinent part, "No *compensation* (italics ours) except as provided by §§28-33-5 to 28-33-12, inclusive, 28-33-18, and 28-33-19, shall be paid under chapters 29 to 38, inclusive, of this title for any injury which does not incapacitate the employee for a period of at least three (3) days from earning full wages * * *."

No useful purpose would be served in prolonging this opinion by quoting or even paraphrasing the other sections expressly exempted by §28-33-4. Suffice it to note that except for §28-33-18 which provides for partial incapacity, none of the exempted sections relates to payments for incapacity for work. Nevertheless, the legislature in §28-33-4 defines the benefits conferred by the exempted sections as "compensation."

In *Agostinho* v. *Kaiser Alum. & Chem. Corp.*, 94 R. I. 51, 177 A.2d 630, this court referred to the dental services authorized by §28-33-10 as "compensation," while in *Redfearn* v. *The Pawtuxet Valley Dyeing Co.*, 105 R. I. 81, 249 A.2d 657, we held that an agreement to pay compensation under a non-prejudicial agreement obligated the employer to pay the reasonable medical expenses incurred within the period covered by such agreement when the full commission found that such medical expenses were necessary to cure, rehabilitate or relieve an injured employee from the effects of his injury. Thus, this court, adhering to the legislative definitions, has held on the one hand, medical expenses, as such, to be "compensation," and, on the other, that an agreement to pay "compensation" includes the payment of medical expenses.

We hold then that the general assembly, cognizant of

the remedial purposes of the workmen's compensation act, employed the word "compensation" as the same is used in §28-35-45 to include payments for medical services and charges as well as hospitalization and medicines. Consequently, it is our judgment that the instant petition was timely brought.

This brings us to a consideration of petitioner's reason of appeal that the commission's finding that petitioner was able to do light work at which he could earn more than his average weekly wage at the time of his injury is contrary to the undisputed evidence. This evidence on which petitioner relies establishes that since July 1965, when respondent closed its plant, petitioner has been unable to obtain employment other than for a seven-month period in which he worked at Goodwill Industries, referred to by the single commissioner as "sheltered" employment. It also establishes that while working at Goodwill Industries, he never earned more than $35 weekly. Moreover, he testified that when drawing unemployment compensation benefits, he was several times referred by that agency to potential employers but was always told that he would be sent for, if needed. The petitioner's testimony, he feels, clearly demonstrates that his lack of success was due to his condition. From this, petitioner argues, the only reasonable inference to be drawn is that as a result of his injury, he remains incapacitated for work.

If the foregoing were in fact all the evidence on which the commission could have made their finding, there might be merit to petitioner's contention. However, it is also undisputed that for some twelve years after his accident, during ten years of which he was paid more than his average weekly wage, petitioner worked for respondent in several capacities, serving for example as an assistant clerk, keeping time records, operator of a blue-print machine, and for the last four years as the plant's storekeeper, receiving

and filling orders requested by the several departments. Furthermore, the commission made special note of petitioner's annual income received from social security and the veterans' administration. While such income as such is without probative force on the issue of petitioner's capacity for work, it is a factor, which considered with all the evidence, including the fact that he had not sought work since January 1966, and his admission that he was not sure whether he remained incapacitated or not, established the basis for a reasonable inference that petitioner was able to perform work at which he could earn more than his average weekly wage, if genuinely interested in obtaining such work. It is fundamental that when there is competent evidence to support a reasonable inference, the drawing of such an inference constitutes a finding of fact. *Lima* v. *William H. Haskell Mfg. Co.,* 100 R. I. 312, 215 A.2d 229.

Thus, the record discloses evidence competent to support the commission's finding that petitioner failed to establish incapacity for work. In such circumstance this court, absent fraud, may not disturb the commission's finding. *DeFusco* v. *Ochee Spring Water Co.,* 84 R. I. 446, 124 A.2d 867.

Neither is there merit to petitioner's further contention on the issue of incapacity, namely that he qualifies for weekly compensation benefits by reason of the "odd lot" doctrine. In support thereof he cites *Olneyville Wool Combing Co.* v. *DiDonato,* 65 R. I. 154, 13 A.2d 817. There, a middle aged woman of limited education who all her working life had been employed as a wool comber, sustained an injury to her back from which she never completely recovered. Her doctors testified that although she was unable to do the work to which she was accustomed she was able to do light work of some nature, but indicated no particular type of work that she was able to perform.

That case was tried on the employer's petition to review.

This court, acknowledging that the "odd lot" doctrine had long prevailed in this jurisdiction, citing *Lupoli* v. *Atlantic Tubing Co.*, 43 R. I. 299, 111 A. 766, pointed out that where the condition resulting from the injury remains and by reason thereof the employee is unable to do his customary work, the burden is on the employer, the *moving party* (italics ours) to establish the work status for which petitioner contends.

In the case at bar, petitioner's customary work was that of a laborer. The condition resulting from the injury, namely the loss of his right leg, remains, as previously noted; however, there was evidence from which the commission could and did find that petitioner was able to do light work. The petition to review on the ground that incapacity had increased or returned, having been brought by the employee, it was his burden to establish that the condition resulting from his injury prevented him from obtaining employment. This, as heretofore noted, petitioner failed to do. His reason of appeal based on the commission's finding of no incapacity and denial of compensation as an "odd lot" petitioner is without merit and overruled.

In addition to seeking compensation for incapacity, petitioner, as heretofore stated, sought by his amended petition to have respondent pay for the adjustments and repairs to the prosthesis amounting to $139, as well as to hold respondent liable for future medical expenses of $225.

The single commissioner found and on their independent examination of the evidence, the full commission affirmed the findings that the adjustments and repairs for which petitioner paid $139 were necessary to cure, rehabilitate or relieve petitioner from the effects of his injury, and that the sum of $139 was reasonable. They further affirmed the single commissioner's finding that the future medical ex-

228

penses and charges sought were also reasonable and necessary.

These findings being favorable to petitioner, he understandably did not assign them as errors in his reasons of appeal. The respondent, however, although having claimed no appeal from the commission's decree, contended in its oral argument and brief that such findings were contrary to law in that there was no legal evidence to support them. It is well established that a finding of fact not supported by legal evidence, or by a reasonable inference drawn from such evidence, constitutes an error of law. *Berkshire Fine Spinning Assoc., Inc.* v. *Label*, 74 R. I. 6, 60 A.2d 871.

When the case was argued before us, respondent's standing to contest the findings in question was raised and the parties were permitted to file supplementary briefs on that issue. In support of its standing, respondent argues that §28-35-29, authorizes an appeal to this court only by a person aggrieved by the final decree of the full commission. Since, it further contends, the decree of the full commission denied and dismissed the petition to review, respondent was not aggrieved thereby, hence precluded from taking an appeal. It is the decree and not the orders or findings contained therein that is appealable, respondent argues, and in support thereof calls our attention to *Jules Desurmont Worsted Co.* v. *Julian*, 56 R. I. 97, 183 A. 846.

That case is not in point. To the extent that respondent relies on it, the case holds only that an appeal will not lie where the superior court, in a rescript, made certain findings, but did not thereafter enter a decree, it being the intention of the legislature to have workmen's compensation causes follow the course of equity as closely as practicable. In that practice, findings of fact and orders contained in a rescript are not enforceable where no decree is thereafter entered; where there is no decree, there is nothing

from which to appeal, it being elementary that equity speaks through decrees.

In *Corry* v. *Commissioned Officers' Mess (Open)*, 78 R. I. 264, 81 A.2d 689, a finding favorable to an essential part of the employee's case was made, but her claim was dismissed on the ground that her injury was not work-connected. From the decree embodying both findings, the employee appealed to this court where it was held that the employer respondent, not having appealed, was precluded in this court from challenging the correctness of that finding favorable to the employee. Consistent with the holding in *Corry*, we think it clear that a party, such as respondent here, is aggrieved by a decree which contains a finding or order adverse to him, and such decree is appealable by him. Here, respondent took no appeal from the decree containing the adverse findings and may not, therefore, contest such findings in this court.

We hold, therefore, that petitioner, having brought his petition to review within the required time period as previously related, is entitled to be compensated for the $139 paid by him in connection with the adjustments to his prosthesis, as well as to the additional adjustments thereto, that the commission found to be reasonably necessary.

In connection with this holding, however, we find it necessary to correct a misunderstanding by the commission and the parties as to petitioner's necessity to obtain commission approval under §28-33-5, as amended, to exceed the legal maximum for medical expenses set forth in said §5. Before hearing, petitioner was permitted to amend his petition to include such permission. The single commissioner, and on their independent review, the full commission, made no ruling on the permission sought. We deem it advisable therefore to point out that the legislature has placed no maximum for such expenses or charges. An examination of said §28-33-5, as amended, discloses that while

it was careful to fix dollar limits as to what would be reasonable for medical services and medicines as well as establishing a formula for what would constitute reasonable hospitalization costs, beyond which limits an employer would not be responsible, absent a finding by the commission that to cure, rehabilitate or relieve an injured employee from the effects of his injury, it would be necessary to exceed such limits, the legislature employed language designed to exempt prostheses and other apparatus from the maximum fixed for medical services, medicines and hospitalization.

This is not to say, however, that there is no limitation as to the extent of an employer's responsibility for prostheses and the like. Before an injured employee can hold his employer to responsibility for expenses incurred in connection with obtaining, replacing, repairing or adjusting prostheses or apparatus, in case of dispute, there must be a finding by the commission that the same are reasonably necessary to cure, rehabilitate or relieve employee from the effects of his injury and we think it clear, that the charge therefor is reasonable. Here the commission made such findings.

The petitioner's appeal is sustained and the decree appealed from is sustained in part and reversed in part. Moreover, the petitioner having prevailed on his appeal before us, may, in accordance with provisional rule 5 of this court present a motion for counsel fees for services performed before us. After a determination has been made by this court relative to said motion, the cause shall be remanded to the workmen's compensation commission for entry of a new decree, modified so as to conform to our decision and further modified so as to include an award of counsel fees for services performed before the single commissioner and the full commission.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, Thomas D. Gidley,* for respondent.