373 A.2d 816.

MOLONY & RUBIEN CONSTRUCTION CO. *vs.* JOHN SEGRELLA.

JUNE 1, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is a workmen's compensation proceeding, in which the employee is before us on an appeal

from a decree of the Workmen's Compensation Commission affirming a trial commissioner's finding that the employee was no longer incapacitated and that he could return to his usual occupation on a full-time basis. Hereafter we shall refer to the employee by his last name and to the employer as Molony & Rubien.

The record indicates that on August 21, 1970 Segrella was working for Molony & Rubien as a carpenter when he fell from a height of 24 feet and sustained a variety of injuries. On December 30, 1970, he filed a petition with the commission in which he asked for benefits for total incapacity, medical expenses, specific compensation for the "partial permanent loss of use" of the right arm, and counsel, witness, and sheriff fees. On March 24, 1971, a consent decree was entered. It found that Segrella had fractured his right wrist, which in turn had caused him to be totally disabled for the period beginning August 21, 1970 on through to December 7, 1970, and partially disabled thereafter. The weekly benefit for total incapacity was $70. The weekly partial incapacity benefit was to be equal to 60% of the difference between Segrella's pre- and postinjury earnings but in no event could the benefit exceed $70 a week.

A hearing was held on the single issue of Segrella's ability to earn while he was partially incapacitated. The trial commissioner ruled that since Segrella had been receiving $50 a week from his grandson for supervising the work of carpenters who were building the grandson's house, he had a weekly earning capacity of $50. On April 5, 1971, the trial commissioner signed and ordered the entry of a decree which, in essence, contained much of what was said in the consent decree plus a finding that Segrella had an earning capacity as of December 8, 1970 of $50. The clerk of the Workmen's Compensation Com-

mission has entitled this proceeding as "John Segrella v. Molony & Rubien Construction Co., W.C.C. No. 70-1769."

About 7 months later, in November 1971, Segrella filed a petition to review, in which he alleged that he was partially incapacitated and was seeking specific compensation benefits because of a "permanent stiffness" in the injured hand. This proceeding was entitled "John Segrella v. Molony & Rubien Construction Co., W.C.C. No. 71-1557." On December 7, 1971, a consent decree was entered in this proceeding. It contains a single finding of fact, to wit, "The petitioner has sustained a 21% permanent impairment of his right upper extremity," and an order directing Molony & Rubien to pay Segrella an additional weekly compensation benefit of $45. The first payment was due on November 10, and the payments were to be made for a period of "52.24 weeks." Thus it was that Segrella at one point in time was receiving a weekly benefit for his partial incapacity and an additional benefit of $45 for the loss of use of the "right upper extremity."

However, in early April 1974, Molony & Rubien filed a petition to review, in which it alleged that Segrella's incapacity for work had ended. This particular proceeding was entered in the records of the Workmen's Compensation Commission and entitled "Molony & Rubien Construction Co. v. John Segrella, W.C.C. No. 74-0540." This proceeding is the one that we are now reviewing.

A hearing on Molony & Rubien's petition began before a trial commissioner on May 20, 1974, and additional evidence was presented on three subsequent occasions. The last hearing date was November 26, 1974.

The first witness was Segrella. He was now almost 70 years of age and had been working part-time for about 2 years as a gateman at a Providence lumberyard. The gateman makes sure that those motorists whose vehicles are leaving the premises carrying building supplies present

a receipt to him which indicates that they have paid for their cargo. Segrella claimed that as a result of his stiff wrist he could not swing a hammer with the degree of authority and accurately that he possessed in 1970.

The next witness was an orthopedist, who, at Molony & Rubien's request, had examined Segrella in March 1974. This specialist was aware of the 21% evaluation factor, but his findings indicated that the degree of loss of use had been reduced. The witness told the trial commissioner that, in his opinion, Segrella was able to perform all the tasks expected of a carpenter who seeks full-time employment.

The next witness was another orthopedist, who had examined Segrella in June of 1974. He referred to Segrella as his patient and indicated that the patient was unable to operate as a carpenter for even an entire day.

Confronted, as he was, with this contradiction of expert opinions, the trial commissioner made a sagacious move. He appointed as an impartial examiner another orthopedist, who examined Segrella in mid-September 1974. The impartial examiner submitted a report in which he expressed the opinion that Segrella could work full-time as a carpenter. His report indicated that a permanent loss of use factor for the upper right extremity was 12%. The impartial examiner appeared at a November 26, 1974 hearing, where he was cross-examined by Segrella's counsel. The witness expounded on his report by testifying that he believed that the functional use of Segrella's right hand and wrist was such that he could work as a carpenter on a full-time basis with no restriction.

The trial commissioner had a choice of expert opinions, and he picked those expressed by the impartial examiner and the surgeon who had appeared on behalf of the employer. The employee's appeal is based upon his view that since the December 1971 consent decree contains a find-

ing of a-21% permanent loss of use of the right upper extremity in 1971, this finding, under the doctrine of res judicata, becomes an immutable finding of fact. According to Segrella, any medical opinion which contains a finding of no capacity which is based upon an incidental finding that the loss of use is less than the 21% factor is entitled to no weight whatsoever. We do not agree.

The doctrine of res judicata operates as an absolute bar to the litigation again of the same claim between the same parties, and a verdict rendered on the merits of the first case is not only conclusive as to the issues which were actually determined there, but also precludes the reconsideration of all other issues which might have been raised in the initial litigation. *Perez* v. *Pawtucket Redev. Agency,* 111 R.I. 327, 302 A.2d 785 (1973). However, this court has made it clear that the traditional view of res judicata does not apply to proceedings conducted before the Workmen's Compensation Commission. In *DiVona* v. *Haverhill Shoe Novelty Co.,* 85 R.I. 122, 127 A.2d 503 (1956), we said that res judicata could not be strictly applied in compensation cases because the General Assembly, by its adoption of what is now G.L. 1956 (1968 Reenactment) §28-35-45, has declared that any agreement or decree calling for the payment of compensation can be reviewed at any time during the time compensation is being paid. The petition can be filed by either party upon the allegation that the employee's incapacity has "diminished, ended, increased or returned" and on consideration of such a petition the commission may "decrease, suspend, increase, commence or recommence compensation payments in accordance with the facts, or make such other order as the justice of the case may require."[1] Section 28-35-45. We

---

[1] If compensation payments have ceased, the statute provides that a petition to review can be filed anytime within the 10-year period following the last payment. *See Thompson* v. *Coats & Clark, Inc.,* 105 R.I. 214, 251 A.2d 403 (1969).

observed in *DiVona* that the petition to review is a vehicle by which a comprehensive right is given to both the employee and the employer to litigate from time to time questions involving a decrease or an increase in an employee's incapacity. Later, in *Varin* v. *Lymansville Co.*, 88 R.I. 169, 177, 143 A.2d 705, 708 (1958), we stated that findings made in one phase of a compensation proceeding are res judicata only insofar as they relate to the nature of the injury at the time of the mishap and at the time of the previous hearing and decree.

Specific compensation benefits are paid pursuant to a schedule of benefits delineated in §28-33-19. From time to time we have pointed out that these particular benefits are given without regard to whether or not the conditions or losses described in §28-33-19 have caused a loss of the worker's earning capacity. Such benefits, we have said, are to be considered as "damages" for the injury or loss sustained rather than compensation for the loss of earning capacity. *Jones* v. *Grinnell Corp.*, 117 R.I. 44, 362 A.2d 139 (1976) (disfigurement); *Coletta* v. *State*, 106 R.I. 764, 263 A.2d 681 (1970) (loss of an eye); *Steele* v. *Darlington Fabrics Corp.*, 78 R.I. 272, 81 A.2d 424 (1951) (loss of use of arm).

The sole purpose of the December 1971 finding of a 21% loss of use was to afford Segrella a $45 weekly specific compensation payment which would continue to be paid for a period just in excess of a year and which would supplement Segrella's weekly partial incapacity check. Consequently, the 21% factor[2] was totally irrelevant in

---

[2]General Laws 1956 (1968 Reenactment) §28-33-19(m) provides benefits whenever any bodily member has become permanently stiff or useless. If the member is completely stiff or useless, compensation is paid in accordance with a schedule of benefits due for a complete severance of the particular bodily member so affected. If the stiffness or loss is less than total, §28-33-19(m) provides that the amount of the benefit due the work-

measuring the extent of Segrella's incapacity in the spring of 1974. The review provisions of §28-35-45 make a prior award of compensation subject to the continuing jurisdiction of the Workmen's Compensation Commission so that it can be modified in accordance with a subsequently occurring increase or diminution of incapacity which flows from the established compensable injury. Long ago the New Jersey Supreme Court, in commenting on a somewhat similar statute, said:

"The statutory review does not contemplate the undoing of what has been finally determined. It is a measure designed to do strict justice between the parties. * * * [T]he obvious purpose of this provision is to permit of a readjustment in the award when warranted by a subsequent change in condition. * * * The genius of the provision is the correction of in-

---

er is obtained by multiplying the percentage of loss by the number of weeks compensation is paid for a total severance.

Section 28-33-19(c) calls for the payment of a weekly benefit ranging from a maximum of $45 to a minimum of $30 for a period of 244 weeks to any worker whose hand has been severed at or above the wrist.

Segrella had a fractured wrist. The amount of loss of the use of his right upper extremity was determined by an orthopedist, who used a device known as a goniometer, and a specialist's use of a series of tables found in a publication such as the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (1971). The extent to which an individual can flex a bodily member such as a wrist is measured by the goniometer, and the measurements are applied to tables similar to those found on pages 10 to 13 of the American Medical Association's publication. The result is expressed as a percentage of loss to the "upper extremity." The American Medical Association publication notes on page 1 that an "upper extremity" is a unit of the whole person and may be divided into four sections: tthe hand, wrist, elbow, and shoulder.

Applying the above principle to Segrella, it is obvious that the partial loss proviso of §28-33-19(m) came into effect, and the 244 weeks for total severance was multiplied by Segrella's 21% factor. The result of this multiplication should have been a product which showed a $45 specific benefit being paid for a total of 51.24 weeks. It appears that in providing in the consent decree for a $45 benefit for a period of 52.24 weeks, someone's multiplication was just a bit off.

justice consequent upon the inability of medical and surgical experts to make an accurate prognosis — to forecast with certainty the operation of nature's processes; and it is therefore an entirely reasonable and wholesome measure to effectuate the beneficent object of the statute, *i.e.*, to secure to the injured employee the prescribed compensation for the disability actually suffered." *Tucker* v. *Frank J. Beltramo, Inc.*, 117 N.J.L. 72, 79-80, 186 A. 821, 825 (1936).

We have observed that when an employee suffers an injury which results in an agreement calling for the payment of compensation or the filing of an original petition, all proceedings before the commission which are based on that injury are part of a seamless robe which reaches completion only after all the employee's rights connected with such injury have been finally exhausted. *Proulx* v. *French Worsted Co.*, 98 R.I. 114, 199 A.2d 901 (1964). We should also add that part of the robe's fabric can be composed of those proceedings in which the employer claims and proves that his employee's physical disabilities diminished to the point where the employee is now capable of performing all the chores that were once part of his job. It follows, therefore, that the 21% decree of 1971 in no way precluded a finding in 1974 of a lesser percentage of loss of use in Segrella's right upper extremity.

The employee's appeal is denied and dismissed.

Mr. Chief Justice Bevilacqua did not participate.

*Gunning, LaFazia & Gnys, Inc., Raymond A. LaFazia, Netti C. Vogel,* for petitioner.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Jordan Stanzler,* for respondent.