264 A.2d 916.

GEORGE PROVENCHER *vs.* GLAS-KRAFT, INC.

MAY 7, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an employee's petition for workmen's compensation benefits. It is before us on the employee's appeal from a final decree of the full commission affirming the trial commissioner's denial of the petition. Hereafter, we shall refer to the employee as the "petitioner" or by his last name.

In 1962, petitioner was working for respondent as a maintenance man. On March 6, 1962, while he was setting up some machinery, petitioner slipped on the oily floor and struck his head against the flywheel of one of the machines. Over a year later, on May 24, 1963, petitioner sustained a second injury. This time he was working in the elevator pit when a wooden plank fell from a second floor level down the elevator shaft and struck petitioner on the top of the head. After each episode, petitioner complained of headaches and pain in his neck. Although he received medical assistance on each occasion, petitioner lost no time from work.

However, on September 9, 1964, as he was operating a milling machine, petitioner began to experience headaches, blurring of his vision, numbness on his right side and a slurring in his speech. The petitioner was taken by respondent's supervisor to a physician who in turn immedi-

ately referred petitioner to a neurosurgeon. The petitioner was then admitted to the Rhode Island Hospital where he remained for over three weeks. While at the hospital, petitioner underwent an extensive series of tests including angiograms, a lumbar puncture, and an electroencephalogram. X-rays of his skull and cervical spine were negative. The neurosurgeon diagnosed his patient's difficulty as a cerebral vascular insufficiency which was "probably precipitated" by the 1962 and 1963 blows of the head, and referred petitioner to a neurologist for treatment with anticoagulants. The petitioner returned to work on December 6, 1964.

On May 28, 1965, petitioner filed a petition for compensation benefits arising from his 1964 absence from work. A hearing was held in the summer of 1965 before a trial commissioner. The respondent opposed the petition on the ground that petitioner's vascular disorder was due to his hypertension rather than the injuries to his head. Its opposition was based on a medical report prepared by a neurosurgeon who examined petitioner at the request of respondent's insurance carrier. While this physician was of the opinion that petitioner's incapacity was not work-related, he conceded that Provencher's head injuries might have been a precipitating factor which led to his hospitalization and his three-month period of total incapacity. The trial commissioner awarded petitioner compensation benefits. A decree was entered on August 17, 1965, which declared that petitioner had sustained a head injury arising out of and during the course of his employment.

Despite recurring head and neck pain, petitioner remained on the job until March 1966 when the headaches became so severe he had to quit work. He saw his neurosurgeon on March 14, 1966, and continued to see him periodically until June 1966 when he was sent to the hospital for a myelogram. The myelogram was performed on June

13, 1966. It revealed that petitioner had a ruptured disk between the fifth and sixth cervical vertebrae. The neurosurgeon believed that this condition was related to the earlier head injuries.

On August 24, 1966, Provencher filed a petition to either amend or review the 1965 decree on the grounds that it did not completely set forth the nature and location of his injuries. When the petition came on for hearing, petitioner amended[1] his petition by striking out any prayer to amend the earlier decree, and he proceeded solely on the theory that his present incapacity was due to his head injury. This petition was denied because of petitioner's failure to prove that his absence from the job was due to the injury set forth and described in the decree under review. The petitioner took no appeal from the trial commissioner's action.

Instead, on June 11, 1968, he filed the instant petition for compensation wherein he describes his injuries as "neck strain" and a ruptured cervical disk. A hearing was held in the summer of 1968 by the trial commissioner. Although petitioner's neurosurgeon testified that his patient's disk condition was related to the head injuries set forth in the 1965 decree, the trial commissioner and the full com-

---

[1]The petitioner at this particular point of his travails was on the horns of a dilemma. Section 28-35-61 authorizes the commission to amend a final decree which misdescribes a worker's injuries. However, the commission's power to so act is limited by the statute to a period of six months showing of the entry of the final decree. The commission therefore lacked the power to amend the final decree entered a year earlier. Accordingly, the employee's petition had to be treated as a petition to review, and it then became his burden to prove that the head injury described in the 1965 final decree was the cause of his 1966 incapacity. Since the employee's 1966 disability was unquestionably due to his ruptured disk, he could not prevail on his petition to review. His only recourse was to file, as he did, an original petition for compensation for the incapacity arising from his cervical difficulty. See *Varin* v. *Lymansville Co.*, 88 R. I. 169, 143 A.2d 705.

mission on appeal denied this petition because it was barred by the statute of limitations.

The sole issue before us is whether the full commission was correct when it upheld the denial and dismissal of Provencher's 1968 petition on the grounds that it was not filed within the time provided in G. L. 1956 (1968 Reenactment) §28-35-57. That statute states a claim for workmen's compensation should be barred unless filed within two years after the occurrence or manifestation of the injury or incapacity. This section further provides that the time for filing a claim shall not begin to run in cases of latent or undiscovered physical or mental impairment until "* * * the person claiming benefits knew, or by exercise of reasonable diligence should have known, of the existence of such impairment and its [causal] relationship to his employment * * *."

In *Rastella v. Dept. of Public Works*, 102 R. I. 123, 229 A.2d 43, we held that the knowledge which triggers the two-year period need not be absolute, but rather such as to cause a reasonable man to believe that the condition with which he is afflicted is the probable result of the injury sustained in the course of his employment. The existence of such knowledge, we said, is usually a question of fact to be determined by the commission. While the commission's findings of fact are binding on this court on appeal, it is our belief that the commission's finding that Provencher's petition was not timely filed is erroneous because the commission has misconceived the record before it.

In holding that petitioner was "aware of the nature and extent" of his "neck injury" long before he underwent the myelogram in June 1966, the commission pointed to the two prior petitions which, it asserts, were drafted by petitioner. The first petition filed in May 1965 stated that Provencher had suffered "head and neck injury affecting

eyesight, hands, arm, face, leg, head-right side." The second petition, the so-called petition to amend, speaks of a "neck strain." The commission inferred that these two references to the "neck" showed that petitioner was conscious of his ruptured disk more than two years before he commenced this litigation.

In *Proulx* v. *French Worsted Co.*, 98 R. I. 114, 199 A.2d 901, we said that proceedings before the commission from the time an original petition for compensation for a work-related injury is filed until the time an employee's rights concerning such an inquiry have been finally exhausted are to be considered as a "seamless robe." We have examined the commission's file and transcript concerning the 1965 petition. It is obvious that, when petitioner spoke of a neck injury in his petition, he was in fact describing the pain in his neck which was a manifestation of the injuries to his head. The commission has mistaken petitioner's cervical pain syndrome for a description of an injury. There is absolutely nothing in the records of the 1965 proceeding which indicates that petitioner or any of the doctors who testified attributed his neck pain to the injured disk.

The August 1966 petition to amend or review does speak of a "neck strain." What the commission apparently overlooked in charging petitioner with knowledge of his disk condition because of this allegation is the fact that this petition was filed two months after the myelogram was performed. At that time competent medical authority had informed Provencher that he had indeed injured his neck.

Furthermore, the neurosurgeon testified that the "first occasion" that petitioner's disk condition came to light was when the results of the myelogram disclosed its presence. This testimony was uncontradicted and unimpeached either by direct testimony or by circumstantial

evidence. Triers of fact, in this instance the full commission, cannot disregard such testimony. *Walsh-Kaiser Co.* v. *Della Morte,* 76 R. I. 325, 69 A.2d 689.

It is unreasonable to conclude that an injury is not latent merely because a worker suffers pain when several physicians are unable to correctly diagnose his injury. *Williams* v. *Dobberstein,* 182 Neb. 862, 157 N.W.2d 776. Under our compensation statute, pain is not compensable. Disability is usually the basic factor which gives rise to a claim for compensation.

There is nothing in this record which shows that any of the doctors who treated or examined petitioner ever informed him that the pains in his neck were a manifestation of a ruptured cervical disk. The physician of respondent's carrier, in his report of his examination of petitioner which is part of the 1965 file, remarks that "this is a confusing case." If it confuses a well-qualified neurosurgeon, it must be bewildering to an individual such as petitioner. We cannot expect a factory maintenance man to diagnose a condition which a galaxy of physicians who treated petitioner failed to uncover. The legislature never intended that a doctor's delayed diagnosis would foreclose an employee from seeking to benefit from the benevolent purposes of the Workmen's Compensation Act.

In 2 Larson, *Workmen's Compensation Law,* §78.41, at 262, Professor Larson writes:

> "In determining the time when claimant should have discovered the true nature of his affliction, he should be expected to display no greater diagnostic skill than any other uninformed layman confronted with the early symptoms of a progressive condition. *A fortiori,* his claim should not be barred when qualified physicians have been unable to present him with a diagnosis of his condition within the period of limitations."

In this jurisdiction the statutory limitation of two years on the filing of a claim for workmen's compensation does

not begin to run on a latent injury until the employee has knowledge, either actual or constructive, of his disability and its relationship to his employment. The petitioner did everything that could be expected of any reasonable man seeking to discover the cause of his ailment; until such discovery was made, there was no compensable injury upon which he could base a claim for compensation. The evidence is susceptible of but one interpretation: that it was not until June 13, 1966, that the petitioner was aware, or could reasonably be held to be aware, of the full impact and significance of pains which forced him to leave work in March 1966.

In this case, no compensable claim arose prior to June 13, 1966, and this petition was filed within two years thereafter.

The petitioner's appeal is sustained; the decree appealed from is reversed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*M. Durkan Cannon,* Woonsocket, for petitioner.

*Anderson and Kane, Vincent F. Kane,* for respondent.