362 A.2d 127.

JAMES I. RYAN *vs.* GRINNELL CORPORATION

AUGUST 3, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This is an employee's petition to review a decree of the Workmen's Compensation Commission which terminated the employee's benefits on the ground that his incapacity for work had ended. The full commission affirmed the decree of the trial commissioner denying the petition and the employee brings this appeal.

The petitioner, a foundry worker, sprained his back in 1972 while attempting to lift an 85-lb. ladle. He received compensation benefits until April 4, 1974, when, upon a petition to review brought by the employer, the commission found he was no longer incapacitated. The petitioner returned to work on April 15, 1974, but quit again 1 month later. On June 10, 1974, he brought this petition pursuant to G. L. 1956 (1968 Reenactment) §28-35-45, claiming that the incapacity had returned.

At the hearing, petitioner called Dr. Guy Geffroy, a neurologist who first examined Ryan subsequent to the April 4 termination hearing. Doctor Geffroy testified that he believed Ryan was suffering from a ruptured intervertebral disc and could not perform his regular work. The petitioner's second medical witness was Dr. William Foley, who had treated the original 1972 injury and who had testified in Ryan's behalf at the termination hearing. Doctor Foley also stated that he believed Ryan had a ruptured disc and that he was unable to do his former work. He conceded on cross-examination that his opinion as to Ryan's ability to work had not changed since the termination decree, i.e., that he had believed Ryan was totally incapacitated at that time as well. The records of Dr. Geffroy's consultations with Ryan were also admitted into evidence, as were the results of a myelogram performed on June 24, 1974, which failed to confirm the presence of a ruptured disc.

In such a proceeding, the petitioner has the burden of proving a change of condition since the previous decree. *Vigneau* v. *Grinnell Corp.*, 100 R. I. 453, 216 A.2d 891 (1966); *Balcom* v. *Providence Sheraton Corp.*, 98 R. I. 357, 201 A.2d 913 (1964). The commission found that the evidence introduced in support of the petition, although uncontradicted, was insufficient as a matter of law to satisfy this burden of proof. The commission stated that the testimony of Dr. Geffroy failed to demonstrate a change in condition because he had not examined petitioner prior to the previous decree, that the testimony of Dr. Foley likewise failed to establish a change in condition because he stated that his opinion as to the employee's ability to work had not changed since the termination decree.

# I.

The petitioner first argues that the commission erred in stating that Dr. Geffroy could not effectively testify that his physical condition had changed because the doctor had not examined him prior to the termination decree.

Of course, a witness must have knowledge of the employee's physical condition at the time of the previous decree to be able to testify that the employee's condition had changed since that time. It is clear that

" '[a] claim of increase or decrease of disability is grounded in the comparative condition and ability of the workman and, to prevail, must be supported by proofs which permit comparison.' * * *.

" 'We think that opinion evidence of present disability based only upon existing physical or mental condition, standing alone, is not competent to sustain a finding on the relative fact of an *increase* or a *decrease* in disability. To make such testimony competent for that purpose the witness should at least be informed from his own knowledge, made manifest, or from proofs *aliunde* incorporated into a question, what the workman's condition was at the time when the court rated it at a fixed partial permanent disability. The use of the word "increase" or of the word "decrease" connotes two states of physical condition, one which was and one which is, and there must be knowledge of each state in order to support a conclusion that the present condition marks an increase or a decrease.' It is manifest from the foregoing that an increase in an award must be predicated upon a comparison of two conditions and cannot be grounded solely upon an estimate of the injured person's present degree of disability." *Hopler* v. *Hill City Coal & Lumber Co.*, 5 N. J. 466, 471-72, 76 A.2d 17, 20 (1950); *accord, State Compensation Fund* v. *Industrial Comm'n*, 23 Ariz. App. 505, 534 P.2d 436 (1975); *Workmen's Compensation App. Bd.* v. *Gimbel Bros.*, 19 Pa. Commw. 176, 338 A.2d 755 (1975); 3 Larson, *Workmen's Compensation*, §§81.31-.33 (1976).

18

But we do not agree with the commission's view that such knowledge may be obtained only by personally examining the employee at the time of the earlier decree. The witness may make the necessary comparison from the records of another doctor, the results of x-rays and other tests, or in response to properly posed hypothetical questions. *State Compensation Fund* v. *Industrial Comm'n, supra* (medical records); *American Mut. Liab. Ins. Co.* v. *Grimes,* 100 Ga. App. 51, 109 S.E.2d 837 (1959) (hypothetical questions); *Florek* v. *Board of Educ.,* 18 N. J. Super. 425, 87 A.2d 381 (1952) (hypothetical questions); 3 Larson, *Workmen's Compensation* §81.33 (1976).

We have said that a workmen's compensation proceeding insofar as it relates to the worker's injury is a "seamless robe." *Provencher* v. *Glas-Kraft, Inc.,* 107 R. I. 97, 102, 264 A.2d 916, 918 (1970); *Proulx* v. *French Worsted Co.,* 98 R. I. 114, 123, 199 A.2d 901, 906 (1964). The agreement which is presently under our scrutiny lists the nature and the location of Ryan's injury as a "back strain." The April 4, 1974, suspension order contains a finding that Ryan is no longer either totally or partially incapacitated from that injury.

There is in the record, however, competent evidence from which it appears that Dr. Geffroy made the necessary comparison between Ryan's condition before and after the April 1974 suspension order.

In his report of Ryan's May 2, 1974 examination, Dr. Geffroy referred to a June 1973 myelogram performed by Dr. Walter Cotter, and he also asked that copies of any prior neurological, orthopedic, or electrodiagnostic evaluation involving Ryan be forwarded to him. A month later in his report relating to a June 3, 1974 examination, Dr. Geffroy told of the comparison he made with the findings contained in an April 1973 neurological evaluation made by Dr. Faella. In that report, Dr. Faella at-

tributed Ryan's difficulties to "peripheral neuritis." Doctor Geffroy's report diagnosing Ryan's complaint as stemming from a ruptured intervertebral disc contained this notation: "Certainly peripheral neuritis does not explain his [Ryan's] picture." Later in the month of June 1974 Ryan returned to the hospital for a myelogram, which was performed by Dr. Geffroy. Although the myelogram failed to disclose any disc injury, Dr. Geffroy told the trial commissioner that in certain percentages of cases the injury does not show up during myelography.

In his testimony before the trial commissioner Dr. Geffory remarked that he had consulted with Dr. Cotter and that Dr. Cotter agreed with his diagnosis. The record indicates that in 1973 Dr. Cotter was of the opinion that Ryan was suffering from a "chronic low back strain" and in a report dated December 13, 1973, Dr. Cotter stated that Ryan had normal straight-leg raising. However, Dr. Geffroy during cross-examination told the trial commissioner that when he examined Ryan in May of 1974 he found that his patient's straight-leg raising was restricted. This witness testified that once Ryan returned to work at Grinnell Corporation his pain increased to the point where his employment should be restricted to light work.

It is our belief that there is in the record evidence which, if found credible, would warrant the conclusion that Dr. Geffroy had made the necessary consultation so that the fact that he had not examined Ryan before April 1974 would be immaterial. However, factfinding is the sole responsibility of the commission. Consequently, we remit this case to the commission to make such finding of fact as is warranted after a full evaluation of Dr. Geffroy's testimony.[1]

---

[1] We acknowledge the principle urged by petitioner that uncontroverted evidence must ordinarily be accepted as fact by the commission *E.g., Gorman* v. *Hand Brewing Co.,* 28 R. I. 180, 66 A.209 (1907). This rule is

## II.

The petitioner next argues that the commission erred when it stated that the testimony of Dr. Foley was insufficient solely because he expressed the same opinion as to petitioner's ability to work as he had at the April 4th termination hearing. He contends that if he demonstrates that there has been a change in his physical condition since the previous decree, he may rely upon Dr. Foley's testimony that he is totally disabled, even though the commission rejected the same opinion at the previous hearing.

Although we are able to discover only three cases directly on point,[2] each supports petitioner's view. In each case, a medical witness had testified at a previous hearing that the employee in question was totally disabled, but the board had awarded only partial disability. In subsequent proceedings, the same witness again testified that the employee was totally disabled. There was also specific evidence in each case that the employee's physical condition had deteriorated since the first hearing. All three courts held that the new testimony coupled with the changes in physical condition was sufficient to support a finding of total disability. *U.S. Fidelity & Guar. Co.* v. *Wilson,* 103 Ga. App. 674, 120 S.E.2d 198 (1961); *Workmen's Compensation App. Bd.* v. *Gimbel Bros., supra;*

---

not absolute, however. The commission may ignore evidence that contains inherent improbabilities or contradictions. Due to its treatment of this case, the commission made no assessment of the credibility of the evidence. While it does not appear that the evidence in question is inherently incredible, we believe the proper disposition is to remand the case so that the commission may consider the factual questions involved.

[2] We do not believe this question is controlled by *Vigneau* v. *Grinnell Corp.,* 100 R. I. 453, 216 A.2d 891 (1966), or *Balcom* v. *Providence Sheraton Corp.,* 98 R. I. 357, 201 A.2d 913 (1964). In neither case was there any finding that the petitioner's physical condition had changed since the previous decree.

*Perry* v. *State Workmen's Compensation Comm'r*, 152 W.Va. 602, 165 S.E.2d 609 (1969).

Since there was some evidence of physical change in the testimony and records of Dr. Geffroy, it was error to dismiss Dr. Foley's testimony in this fashion.

The employee's appeal is sustained, the decree of the commission is reversed, and the matter is remanded to the Workmen's Compensation Commission for further proceedings consistent with this opinion.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* for respondent.