Joseph COSTELLO,

v.

NARRAGANSETT ELECTRIC
COMPANY.

No. 92–266–M.P.

Supreme Court of Rhode Island.

April 15, 1993.

Gregory Boyer, Boyer, Reynolds & De-
Marco, Providence, Ronald Cavallaro, War-
wick, for plaintiff.

Mary F. McGair, Providence, for defen-
dant.

OPINION

SHEA, Justice.

This matter comes before the Supreme
Court pursuant to the petition of Joseph
Costello (Costello or employee) for certiora-

ri to review an order of the Workers' Compensation Appellate Division denying his appeal from a trial judge's decision that denied his petition to review in which he sought a resumption of disability payments. We affirm the decree of the Appellate Division.

The pertinent facts of the case are that Costello sustained a work-related injury to his lower back while removing a bulkhead in the course of his duties as a meter reader for defendant, Narragansett Electric Company (Narragansett Electric), on October 24, 1977. He collected workers' compensation benefits for total disability pursuant to a decree of the Workers' Compensation Court. The benefits continued until November 27, 1987, when the court suspended payments following a finding, by the compensation court, based on medical evidence that indicated that employee was no longer disabled. The evidence established that although Costello had been treated conservatively since 1977, he was no longer undergoing any physical therapy, diagnostic testing, or other active treatment. In addition he was not taking any medication or engaged in any form of rehabilitation.

Costello unsuccessfully appealed the November 27, 1987 decree suspending compensation to the Appellate Division. In an effort to reinstate his benefits on December 22, 1987, Costello filed a petition to review, alleging that his condition had worsened from the time of the suspension decree on November 27, 1987, twenty-five days earlier. The petition to review was heard by a judge of the Workers' Compensation Court. It was denied, and the Appellate Division affirmed.

The issue we must consider is whether Costello failed to sustain his burden of proving a recurrence of the disability.

When an employee files a petition pursuant to G.L.1956 (1986 Reenactment) § 28–35–45 "to review a compensation decree currently suspending previously awarded benefits on the ground that an incapacity for work has recurred by reason of the effects of the original work-related injury," the employee "bears the burden of proving with competent evidence the essential elements of the claim set forth in the review petition." *Faria v. Carol Cable Co.*, 527 A.2d 641, 643 (R.I.1987) (citing *Coletta v. Leviton Manufacturing Co.*, 437 A.2d 1380, 1383 (R.I.1981)). The specific requirement is that the employee present competent evidence that establishes that the recurrence of incapacity happened after the suspension decree and that such recurrence was causally related to the "original and previously compensated injury." 527 A.2d at 643 (citing *Martinez v. Bar–Tan Manufacturing Co.*, 521 A.2d 134, 139–40 (R.I.1987); *Coletta*, 437 A.2d at 1383).

In order to satisfy this burden and prove a recurrence in the incapacity, the petitioner must document the alleged change by presenting an expert witness who compares the employee's previous condition at the time when benefits were terminated with the employee's present condition and render an opinion that the incapacity has recurred. *Martinez v. Bar–Tan Manufacturing Co.*, 521 A.2d 134, 140 (R.I. 1987) (citing *Belanger v. Weaving Corp. of America*, 120 R.I. 348, 351, 387 A.2d 692, 694 (1978); *Ryan v. Grinnell Corp.*, 117 R.I. 14, 17, 362 A.2d 127, 129 (1976)). The causal connection necessary between the recurrence of incapacity and the original work-related injury can generally be proven only by competent medical evidence. *Faria*, 527 A.2d at 643. In the presentation of medical evidence to prove the recurrence of incapacity:

"[T]he question that an expert must address when asked to render an opinion on whether an incapacity has recurred is whether the employee's condition at the time of the alleged recurrence represents a deterioration of the employee's condition from the time of the suspension decree. The expert's answer must rest *on a comparison of the two conditions.*" (Emphasis added.) *Id.* at 644.

We have stated that "the rule requiring opinion evidence to be in itself sufficiently comparative so as to document the alleged change in the employee's condition is grounded on the general principle that an

expert witness may not testify to a conclusion without laying an adequate foundation for that conclusion." *Id.* (citing *Martinez*, 521 A.2d at 140; *Belanger*, 120 R.I. at 351, 387 A.2d at 694; *Ryan*, 117 R.I. at 17, 362 A.2d at 129). In this case Costello was alleging that his incapacity had increased from what it was at the time of suspension of his benefits on November 27, 1987, to a different or more severe disability at the time that he petitioned for review on December 22, 1987. Medical evidence specifically comparing Costello's condition at the time of the suspension in benefits with his condition at the time of his petition for review was necessary to sustain his claim of recurrence of incapacity.

The medical opinions of three physicians were considered below. Doctor Peter A. Pizzarello, plaintiff's treating physician since 1977, examined Costello several times in relation to this injury. Based on his examination and Costello's complaints of back pain, the initial diagnosis following the date of injury in October 1977 was an "acute paralumbar muscle strain." In an examination during September of 1987 he found plaintiff to be partially disabled by a recurring spasm in the "left gastroc muscle * * * the muscle in the back of the leg, below the knee."[1] Subsequently, in December of 1987, Dr. Pizzarello found Costello to be suffering from a back spasm and a spasm of the entire left leg. Although he considered Costello's condition to be deteriorating, he still classified him as partially disabled but able to continue work. After Dr. Pizzarello's most recent examination of Costello, on March 15, 1988, he considered him totally disabled and unable to work.

Doctor Pizzarello's opinions did not reveal, however, that the present disability was causally related to his work injury sustained in 1977. As the trial court pointed out in its initial decision, Dr. Pizzarello admitted on cross-examination that during the course of his treatment, Costello had had a "myelogram" that read "essentially within normal limits." He also admitted

that "the gastroc muscle has been jumping since 1977," so that this objective sign had not changed. Most importantly the testimony by Dr. Pizzarello failed to compare Costello's present condition with the condition that existed at the time of the suspension, November 27, 1987.

The plaintiff also relied on the reports and affidavit of Dr. Louis A. Fuchs in demonstrating his recurrence of incapacity. Although Dr. Fuchs reported at the time of suspension that Costello was not disabled, he diagnosed Costello on August 15, 1988, as a patient suffering from "chronic, cervical, thoracic and lumbosacral myofascitis, rule out chronic pain syndrome." He also noted that his patient "has since developed diverticulitis and now, as compared to 3/87, his orthopedic condition is 'worse.'" Doctor Fuchs also failed to provide the necessary comparison of the patient's present condition when he examined him in August 1988 with the condition at the time of the suspension decree in November 1987.

The third doctor to render an opinion was Dr. Edward Spindell who testified on behalf of the employer, Narragansett Electric. Upon examination of the employee Dr. Spindell "found no evidence of spasm, weaker muscle atrophy or reflex change." He testified that "x-rays of the cervical spine revealed moderately advanced degenerative arthritic changes, similar changes were present in the lumbosacral spine." Though "the x-rays his hips were within normal limits," Dr. Spindell indicated "that the lumbosacral spine revealed degenerative disc narrowing." As noted by the trial judge, Dr. Spindell's impression was that employee had "long-standing localized degenerative arthritis in the lower spine, and the lower lumbosacral spine." Doctor Spindell found no objective evidence of "any significant orthopedic disability referable to those areas," and concluded that "he [Costello] was capable of performing his normal work."

---

1. We assume here that "gastroc" was intended to be an abbreviated form of "gastrocnemius." The latter being defined as "calf of the leg."

Stedman's Medical Dictionary 576 (5th unabridged Lawyer's ed. 1982).

■ Under the reasoning in *Martinez*, comparative evidence has been required in situations in which an employee alleges a recurrence of incapacity or an employer alleges a decrease in incapacity. *C.D. Burnes Co. v. Guilbault*, 559 A.2d 637 (R.I.1989). Both the trial court and the Appellate Division found that the evidence put forth by Costello was not sufficiently comparative as required by *Faria* and *Martinez*.

In only one situation is there no requirement for comparative evidence, and that is when an employer is asserting that an employee's incapacity has ended. The doctor need testify only of the present ability to work. *C.D. Burnes Co.*, 559 A.2d at 640.

Costello incorrectly relies on our decision in *Proulx v. French Worsted Co.*, 98 R.I. 114, 199 A.2d 901 (1964), stating that he is relieved of his burden of presenting comparative evidence because such medical evidence existed in the record and that the trial judge and Appellate Division erred in failing to compare Dr. Fuch's report of August 15, 1988, with his report of November 27, 1987, at the time of the suspension hearing. He argues that in *Proulx* this court established the "seamless robe doctrine" when it reviewed an employee's petition to reconsider and stated:

> "[W]e are here constrained to comment on the scope of the record certified to this court in connection with the appeal. It was limited to the record compiled following the filing of the instant petition and it became necessary for us to direct the commission to send up the entire record as compiled from the filing of petitioner's original petition on September 19, 1960.
>
> "When an employee suffers an injury which results in entering into a preliminary agreement or the filing of an original petition, all proceedings before the commission which are based on that injury are of a single record, a seamless robe, which reaches completion only after all the employee's rights connected with such injury have been finally exhausted." *Id.* at 122–23, 199 A.2d at 906.

The court went on to say that the findings of fact set forth in the original decree, together with the issues that were present in the hearing upon which the decree was based, constituted a part of the record that was before this court. *Id.* at 123, 199 A.2d at 906.

In *Ryan v. Grinnell Corp.*, this court, in invoking the seamless-robe doctrine, examined the original agreement between the employer and the employee and the suspension order finding that the employee was no longer partially or totally incapacitated. 117 R.I. at 18, 362 A.2d at 130.

■ Under the seamless-robe doctrine, this court will look to the earlier decrees when considering a petition for review. We have never held, however, that the compensation court or this court will look beyond a final agreement or decree. Neither *Ryan* nor *Proulx* relieves the employee of the burden of producing medical evidence that compares the employee's condition at the time benefits were suspended with his or her physical condition at the time disability is alleged to have recurred. As we have noted in this case, there was no significant comparative evidence by Dr. Fuchs or by Dr. Pizzarello presented to the trial commissioner.

For these reasons the employee's petition for certiorari is denied, the writ heretofore issued is quashed, and the decree appealed from is affirmed. The papers of the case are remanded to the Workers' Compensation Court with our decision endorsed thereon.