**Irene BROOKS**

v.

**DOCKSIDE SEAFOOD.**

**No. 98–311–M.P.**

Supreme Court of Rhode Island.

Dec. 2, 1999.

Robert Smith Thurston, Stephen J. Dennis, Providence, for plaintiff.

Susan Pepin Fay, Vivian B. Dogan, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case comes before us on a petition for certiorari filed by Irene Brooks (Brooks), a former employee of Dockside Seafood (Dockside), following a final decree by the Appellate Division of the Workers' Compensation Court (Appellate Division), denying and dismissing two petitions for benefits. Brooks challenges the Appellate Division's finding that the provisions of G.L.1956 § 28–35–61 govern her petitions, and that the six-month period allowed for the amendment or the modification of decrees of the Workers' Compensation Court bars her claim for benefits.

### Facts and Procedural History

Beginning in 1986 Brooks was employed as a meat wrapper at Dockside, a retail fish and meat market. Because of pain in her wrists, Brooks left work in November 1994 and consulted Arnold–Peter Weiss, M.D., who diagnosed her condition as bilateral carpal tunnel syndrome. Brooks has not returned to work at Dockside since that time. Doctor Weiss performed carpal tunnel release on Brooks's left wrist on March 3, 1995, and on her right wrist on March 31, 1995. When Brooks petitioned the Workers' Compensation Court (WCC) for disability benefits, the court issued a pretrial order, WCC No. 95–0978, on March 29, 1995, finding that Brooks suffered a loss of earning capacity as a result of bilateral carpal tunnel arising out of and in the course of her employment on November 28, 1994, and awarded Brooks partial benefits from November 28, 1994, through March 2, 1995, and total benefits from March 3, 1995, and continuing. On September 22, 1995, in another pretrial order, WCC No. 95–6567, the court found that Brooks's incapacity for work had ended, and her benefits were discontinued as of that date.

Six months later, in March 1996, Brooks was examined by Andrew Green, M.D., for pain in her left elbow and left shoulder. On March 13, 1996, Dr. Green found Brooks to have "ulnar nerve compression * * * causally related to her previous work activities as a meat wrapper." In June 1996 Brooks saw Danny Humbyrd, M.D., an orthopedic surgeon, who diagnosed her with "ulnar neuropathy, left side, and tendinitis, left shoulder," which in his opinion were causally related to Brooks's work activities as a meat wrapper at Dockside. Doctor Humbyrd recommended surgery on both the left elbow and left shoulder. Relying on these diagnoses, Brooks filed a petition to review the prior decree of the WCC, alleging a return of incapacity as of June 14, 1996. On October 7, 1996, pretrial order WCC No. 96–5373 was issued, which denied her petition

to review. Brooks immediately appealed, requesting a trial. That same day Brooks filed a second petition, an original petition claiming benefits for injuries to her left elbow and shoulder that were caused by her job duties at Dockside. The two petitions, WCC No. 96–5373 and WCC No. 96–6582, were consolidated for trial.

A trial judge rendered a decision in WCC No. 96–5373 (the petition to review) and WCC No. 96–6582 (the original petition) on July 18, 1997, denying and dismissing both petitions. Regarding the petition to review, the trial judge found that Brooks had "failed to prove that she sustained a return of incapacity [on June 14, 1996] as a result of or flowing from the effects of her injury sustained on November 28, 1994." Regarding the original petition, the trial judge found that "the allegation as to an injury to her right shoulder and left elbow were known to the employee during the pendency of W.C.C. No. 95–0978" and that Brooks had "not conformed to the requirements of § 28–35–61, that is to amend the decree under review within a six-month period of it becoming final."

On July 21, 1997, Brooks filed a claim of appeal to the Appellate Division, arguing that the trial court erred in finding that her petitions were barred by § 28–35–61, the provision of the Workers' Compensation Act (Act) that allows the court to vacate, amend, or modify any final decree entered by it within *six months* if it should appear that the decree does not accurately and completely set forth and describe the nature and location of the injuries sustained by the employee. Brooks argued that the court should have applied § 28–35–57, the general limitation provision for workers' compensation claims, that provides for a *two-year* period in which to bring a claim for compensation under the Act. On May 26, 1998, the Appellate Division issued its decision regarding the original petition and the petition to review, in which it denied Brooks's appeal and affirmed both decrees of the trial court. The Appellate Division found that there

was no error in the trial court's application of § 28–35–61 as the controlling period of limitation and held that § 28–35–57 was of no assistance to Brooks and that, therefore, both petitions were barred. Brooks petitioned this court for issuance of a writ of certiorari that we granted on November 13, 1998.

## Issues Presented

In her brief and at oral argument, Brooks addressed only the issue of the denial and dismissal of the original petition. Therefore, we shall not address the decision on the petition to review, inasmuch as we are satisfied that the court is without authority to amend or to modify a decree beyond the six-month time limitation in § 28–35–61. The sole issue to be determined by this Court is whether the Appellate Division erred as a matter of law in holding that Brooks's original petition was barred by the six-month time limitation in § 28–35–61.

## Standard of Review

This Court's "review of a decree of the Appellate Division [of the Workers' Compensation Court] is limited to a determination of whether that tribunal erred in deciding questions of law." *Wehr, Inc. v. Truex*, 700 A.2d 1085, 1087 (R.I.1997) (citing § 28–35–30(a)(3)). "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *Wehr*, 700 A.2d at 1087–88.

## Discussion

Brooks argues that the Appellate Division erred as a matter of law when it applied the six month time limitation contained in § 28–35–61 to Brooks's original petition claiming injuries to her left elbow and shoulder. Section 28–35–61 provides, in pertinent part:

"**Decrees procured by fraud.**—(a) The workers' compensation court may,

upon petition of an employee, the dependents of a deceased employee, an employer, an insurance carrier, or any other party in interest, vacate, modify, or amend any final decree entered within a period of six (6) months prior to the filing of the petition, either by a single judge or by the full court, if it shall appear that the decree:

(1) Has been procured by fraud; or

(2) Does not accurately and completely set forth and describe the nature and location of all injuries sustained by the employee."

The Appellate Division applied § 28–35–61 to Brooks's original petition and held that because the WCC pretrial order granting benefits to Brooks for the bilateral carpal tunnel was entered on March 29, 1995, it was incumbent upon Brooks to "bring any action alleging that the decree failed to accurately and completely set forth and describe the nature and location of her injury no later than September 29, 1995."[1] Because the original petition was not filed until October 7, 1996, the Appellate Division held that it was time barred.

In *Luzzi v. Imondi,* 97 R.I. 463, 198 A.2d 671 (1964), we stated that "[t]he clear and unambiguous language of § 28–35–61 conveys a plain meaning and leaves nothing for interpretation" and that it is "remedial in nature and afford[s] a wide latitude to the [WCC] to amend a final decree where the full nature and extent of the injury sustained is not accurately and completely set forth and described." *Luzzi,* 97 R.I. at 466, 198 A.2d at 673. The language of § 28–35–61 is clear and unambiguous in that it provides a mechanism for the WCC to amend a decree that misdescribes, misstates, or omits any injury suffered by the employee and is more in the nature of a vehicle of convenience for the court and the parties. It is also clear that contrary to the characterization as such by the Appellate Division, § 28–35–61 is not a statute of limitation, nor is it a statute of repose.

Brooks's original petition, which is the subject matter of this appeal, claimed injuries to her left elbow and left shoulder. The record indicates that prior to the pretrial order issued in March 1995, Brooks had complained to Dr. Weiss about pain and/or numbness that had occasionally radiated toward the elbow and shoulder. Further, on May 9, 1995, after the pretrial order was issued, Dr. Weiss noted that Brooks

"does have a Tinel's sign at the left elbow and does have a positive elbow flexion test. This has gotten a little worse since I first saw her several months ago. I have gotten her an elbow extension splint to wear at night to see if this improves her overall condition."

On May 30, 1995, Dr. Weiss wrote that Brooks's "ulnar nerve symptoms did improve somewhat with the extension splint." Doctor Weiss discharged Brooks from his care on July 19, 1995, at which time he did not mention any shoulder or elbow symptoms or that Brooks's condition was disabling.

It was not until March 13, 1996, almost a year after the decree granting benefits had been entered, that Brooks consulted Dr. Weiss about the increase in symptoms in her left elbow and left shoulder. Doctor Weiss referred Brooks to Dr. Green, who found her to have "ulnar nerve compression [that] is causally related to her previous work activities." After consultation

---

1. The Appellate Division stated,

> "it should be noted that the pretrial order entered in this matter ripened into a final decree of the court when no timely claim of appeal was filed. [General Laws 1956] § 28–35–20(d) specifically addresses this issue. This section states:
>
> '. . . If no timely claim for trial is filed or is filed and withdrawn, the pretrial order shall become, by operation of law and without further action by any party, a final decree of the Workers' Compensation Court.'
>
> Thus, the unappealed pretrial order which was entered by the court on March 29, 1995, is a final decree subject to the provisions of § 28–35–61."

with Dr. Humbyrd, who recommended surgery on both the left elbow and the left shoulder, Brooks brought the instant original petition for benefits for the injuries to her left elbow and left shoulder.

The Appellate Division stated that in creating § 28–35–61, the Legislature recognized "certain types of injuries may not immediately manifest themselves" and that § 28–35–61 allows parties to "relitigate the nature and location of the employee's injuries for a period of six (6) months after the time an actual decree was entered." We do not agree with the Appellate Division that Brooks's situation was intended by the Legislature to be governed by § 28–35–61, as it is not a statute of limitation. Therefore, we conclude that the Appellate Division erred as a matter of law when it held that Brooks was required to file a petition to change the nature and location of the injuries set forth in the pretrial order within six months of the date of entry. Instead we agree with Brooks's contention that the applicable statute for determining the timeliness of an original claim for workers' compensation benefits is § 28–35–57.[2]

Section 28–35–57 provides, in part:

"**Limitation of claims for compensation.**—(a) An employee's claim for compensation * * * shall be barred unless * * * a petition, as provided for in this chapter, shall have been filed within two (2) years after the occurrence or manifestation of the injury or incapacity * * *.

(b) The time for filing shall not begin to run in cases of latent or undiscovered physical or mental impairment due to injury including disease until:

(1) The person claiming benefits knew, or by exercise of reasonable diligence should have known, of the existence of the impairment and its causal relationship to his or her employment; or

(2) After disablement, whichever is later."

We applied § 28–35–57 in *Provencher v. Glas–Kraft, Inc.,* 107 R.I. 97, 264 A.2d 916 (1970), a case that is factually similar to the present case. In *Provencher* the employee, Provencher, was struck in the head on two separate occasions in 1962 and 1963. In late 1964 he left work temporarily, having been diagnosed with "cerebral vascular insufficiency," which his doctor stated was " 'probably precipitated' by the 1962 and 1963 blows of the head." *Id.* at 99, 264 A.2d at 917. After returning to work, Provencher petitioned the court for benefits for his absence from work; the petition was granted on August 17, 1965. In March 1966 Provencher quit work owing to severe headaches. A myelogram performed on June 13, 1966, revealed that Provencher was suffering from a ruptured disk between the fifth and sixth cervical vertebrae, which the neurosurgeon believed was related to his earlier head trauma.

It was not until June 11, 1968, that Provencher filed a new petition for compensation in which he described his injuries as "neck strain" and a ruptured cervical disk. The trial commissioner and the full commission on appeal denied the petition, finding that it was time barred by the provisions of § 28–35–57. Relying on two previous references to the "neck" by Provencher in petitions filed in 1965 and 1966, the commission held that Provencher was "aware of the nature and extent [of his] neck injury" long before he underwent the myelogram on June 13, 1966, and that, therefore, the statute of limitations began

---

2. We noted in *Salazar v. Machine Works, Inc.,* 665 A.2d 567 (R.I.1995), that the time limitations under the Act "differ from technical statutes of limitations in that the time limitation for actions at common law 'relate solely to the remedy rather than to the substantive right.' " *Id.* at 568. Therefore, the Act is treated as a "statute of repose" wherein the time limitation is "an express condition of the right to compensation and is intended to bar the claim or right to compensation unless its provisions are complied with." *Id.* (quoting *Emmett v. Town of Coventry,* 478 A.2d 571, 572 (R.I.1984)).

to run more than two years before he filed the new petition. We reversed, holding that "[i]n this jurisdiction the statutory limitation of two years on the filing of a claim for workmen's compensation does not begin to run on a latent injury until the employee has knowledge, either actual or constructive, of his disability and its relationship to his employment." *Provencher*, 107 R.I. at 103–04, 264 A.2d at 919. Further, we noted that

"[t]he petitioner did everything that he could be expected of any reasonable man seeking to discover the cause of his ailment; until such discovery was made, there was no compensable injury upon which he could base a claim for compensation. The evidence is susceptible of but one interpretation: that it was not until June 13, 1966, that the petitioner was aware, or could reasonably be held to be aware, of the full impact and significance of pains which forced him to leave work in March 1966." *Id.* at 104, 264 A.2d at 919.

■ In the present case Brooks became disabled as a result of the ulnar neuropathy *after* her first injury (the bilateral carpal tunnel syndrome) was litigated. The ulnar neuropathy was not litigated in the original proceeding for benefits. The fact that the doctors' reports made reference to pain in the elbow and shoulder is of no moment to her claim relative to ulnar neuropathy and rotator-cuff involvement. The manifestation of an injury and the consequent incapacity, not the mere presence of pain, should be the primary consideration for the WCC when reviewing a petition for benefits. Therefore, under *Provencher*, the statute of limitations did not begin to run on Brooks's claim for the injury to her left elbow and left shoulder until June 14, 1996, the date she was aware, or could reasonably be held to have been aware, of the full impact and significance of pain that forced her to leave work in November 1994. Because her original petition for benefits was filed on October 7, 1996, only four months after the diagnoses by Doctors Green and Humbyrd, and less than two years after Brooks actually left work, the petition was timely as a matter of law. Accordingly we conclude that in denying and dismissing Brooks's petition, the Appellate Division was clearly wrong.

For the foregoing reasons the petition for certiorari is granted, the decree of the Appellate Division relating to Brooks's original petition is quashed, and the papers in this case are remanded to the Workers' Compensation Court for entry of a decree granting benefits consistent with this opinion.