403 A.2d 664.

R.A. Beaufort & Sons, Inc. *vs.* Frank J. Trivisonno *et ux.*

JULY 11, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.  On March 8, 1975, the parties to this appeal signed two documents. One was a lease, and the other was a real estate sales agreement. Shortly thereafter they found themselves immersed in litigation. Since the execution of those documents, the litigants have been to the District Court, the Superior Court, and finally this court. The issues that we are asked to resolve are relatively simple, but the litigious trail of the claims and counterclaims which we about to map has become a bit complex. The plaintiff-appellant is R.A. Beaufort & Sons, Inc. The defendants are Frank J. Trivisonno and his wife, Patricia. Hereinafter we shall refer to the plaintiff-appellant as the landlord and the defendants as the tenants.

The landlord is a building contractor who in 1975 was building and selling homes in Warwick in a development called Buttonwoods Estates. The lease and sales agreement concerned a new home which was situated at 70 Larson Drive. The 1-year lease called for a total annual rental of $3,300 payable in monthly installments of $275. Under the terms of the lease, the tenants were to take possession on March 10, after making a preoccupancy payment of $1,000 which consisted of the rent for the first and the last months of the lease, plus an additional $450 "security deposit." The sales agreement called for a $1,000 deposit on a selling price of $36,900 with the tenants to take title sometime within the ensuing year. This agreement was signed by the tenants and by a "Raymond R. Beaufort." Sometime after the sales agreement was signed, the words "R.A. Beaufort & Sons, Inc. (Vice President)" were added to Raymond's signature.

Near the end of the month of April 1975, the landlord initiated a trespass and ejectment proceeding in the District Court against the tenants. The action was brought pursuant to the terms of G.L. 1956 (1969 Reenactment) §34-18-9, as amended by P.L. 1974, ch. 11, §1. In its complaint the landlord alleged that the tenants "are more than 15 days in arrears of the stipulated rental." On May 13 a default judgment was entered in the District Court for the landlord for the possession of the premises and $550, representing all the

rent then due, an attorney's fee of $125, and costs. The next day the tenants filed a motion to vacate and an answer in which they denied that there was any arrearage. After a hearing, the motion to vacate was granted. On May 30 trial was held, and judgment was entered which was similar in all respects but one to the previous judgment. The trial justice refused to award an attorney's fee. No appeal was taken from this action.

On July 9, 1975, the landlord instituted a second District Court suit, in which it alleged that the tenants had breached the lease and thereby became liable for an attorney's fee of $840. The tenants denied these allegations and counter-claimed for the balance of $2,000 in deposits paid to the land-lord, giving it credit for the $550 judgment entered in the trespass and ejectment action. Later, in November, the land-lord was permitted to amend its complaint so that it could seek not only the fee but also damages because of its alleged inability either to lease or to sell the property.

The tenants responded to the June suit by filing a suit in the District Court against Raymond R. Beaufort. They sought the return of the deposits on the theory that the two documents actually amounted to a lease containing an option to buy which could not be exercised because Raymond never owned the property and thus could not convey title. The tenants also sought compensatory and punitive damages and an attorney's fee. Raymond denied the allegations.

The District Court actions were consolidated for trial, and thereafter a stipulation was entered agreeing that judgments would be entered in each action for the landlord and for Raymond, respectively, with appeals being taken by the tenants to the Superior Court where, of course, there would be a de novo hearing.

While the appeals were pending, the tenants filed a peti-tion in the Superior Court seeking to enjoin the sheriff of Kent County from proceeding with a sheriff's sale which was to be held pursuant to an execution that had been issued against their real estate relative to the monetary portion of

the unappealed judgment. The petition revealed that after the tenants had departed from Buttonwoods Estates, they purchased a home in another section of Warwick. In the Superior Court the two appeals and the petition to enjoin the sheriff were consolidated for trial, and a hearing was held before a justice of the Superior Court sitting without a jury.

At the trial, testimony was presented by Raymond R. Beaufort and by Patricia Trivisonno. Among the exhibits presented were the lease and the sales agreement. The lease is a printed form which was prepared by the landlord's trade association. It states that the rent is to be paid in advance on the first day of each month "at our main office or such other place designated by us."

Earlier, we noted the preoccupancy payment of $1,000. The form lists the components of this payment as being the "Security Deposit," "One Full Month's Rent," and the "Balance of First Month's Rent (pro-rate)." Whoever filled in the form struck out any reference to prorating the first month's rent, and thus a full first month's rent was paid by the tenants. Patricia testified that she was not sure when April's rent was due because the first month's rent covered a period ending on April 9. Raymond acknowledged that Patricia and her spouse were not bound by the first-of-the-month proviso and said that April's rent was due on the tenth day of the month. Patricia insisted that after talking to the landlord's agent, she had mailed the April rent to Raymond at his residence. According to Patricia, the rent was in the form of a postal money order and wat mailed on April 15. Two weeks later the letter was supposedly returned to her by postal authorities for lack of a proper address. Raymond took strong issue with Patricia's testimony concerning the mailing, but he did acknowledge that Patricia had come to his home and tendered the rent. The tender, he said, took place in May, but he refused it on the basis of the pending suit. The premises were vacated in mid-June, and the tenants moved to another home, which they had purchased with the financial help of a relative.

Raymond reported that sometime in early or mid-Novem-

ber the landlord had leased the Larson Drive residence. The amounts of the deposit for the sales agreement and the pre-occupancy payment were either identical to or greater than those made by the former tenant. In fact, there was testimony indicating that the new tenants had agreed to purchase the property for $36,900.

In his decision the trial justice ruled[1] that (1) the tenants had not breached the rental provisions of the lease; (2) the landlord was not entitled to a fee for its attorney; (3) the tenants were entitled to a return of the $1,000 deposit paid on the sales agreement; and (4) the landlord's "unreasonable" conduct barred its claim for a loss of rentals. However, the trial justice did observe that the landlord was entitled to be compensated for the time the tenants occupied the premises, the time the premises were unoccupied while the landlord repaired damage done by the tenants, and the costs of those repairs. When the various awards were set off against each other, the landlord was ordered to return to the tenants the sum of $915.

The landlord's appeal centers on the trial justice's denial of its claim for damages for lost rentals and his rejection of its request for a free for its attorney. The landlord attributes these mistakes to the trial justice's misconception about the doctrine of res judicata and his erroneous consideration of a new-trial motion. We need consider the new-trial question because the res judicata issue is dispositive of this appeal.

The doctrine of res judicata operates as an absolute bar to the repetition of litigation of the same claim between the same parties, and a verdict rendered on the merits of the first case is not only conclusive regarding the issues which were

---

[1]The trial justice resolved all facets of this dispute in the landlord's suit. In the tenants' suit against Raymond, judgment was entered for Raymond, and no appeal was taken by the tenants. The judgment entered in the suit enjoining the sheriff's sale bars the landlord from proceeding with the sale once the tenants have satisfied the judgment entered in the trespass and ejectment suit. It appears that the landlord's appeal does not encompass within it the grant of injunctive relief. However, this is a matter which can be resolved upon remand.

actually determined but also precludes reconsideration of all other issues which might have been raised in the original litigation. *Molony & Rubien Construction Co.* v. *Segrella*, 118 R.I. 340, 344, 373 A.2d 816, 819 (1977); *Perez* v. *Pawtucket Redevelopment Agency*, 111 R.I. 327, 335, 302 A.2d 785, 790 (1973). While the landlord speaks of res judicata, since its second suit seeks damages rather than possession, it is actually faulting the trial justice's failure to recognize the doctrine of collateral estoppel. In *Providence Teachers Union, Local 958* v. *McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974), we pointed out that collateral estoppel precludes in a subsequent suit on a different claim the consideration of an issue actually litigated in a prior action between the same parties.

In finding that the tenants had not breached the lease, the trial justice first referred to the lease's ambiguity in regard to the due date of April's rent and the tenant's mailing of the rent. Later, he observed that the "landlord decided that he wanted her out, and he did, in fact, get her out. * * * In my view of the matter, sitting as a Court of Equity, there was no breach of that agreement at the time he went in. I feel his conduct in the premises was unreasonable." In taking this tack, the trial justice somehow overlooked the raison d'etre of collateral estoppel, which is the conservation of judicial resources by the elimination of repetitive litigation of the same issues, particularly between the same parties. *Perez* v. *Pawtucket Redevelopment Agency*, 111 R.I. at 336, 302 A.2d at 791.

Since proceedings in the District Court are not transcribed,[2] we are unaware of what exactly transpired at the May 30 trial of the landlord's trespass and ejectment suit, but a necessary and implicit finding upon which the judgment for possession was based is the fact that the tenants had breached the lease by allowing the rent to remain in arrears

---

[2]There is nothing before us which would indicate whether or not the April 15 tender of the rent was ever presented as an issue in that proceeding.

15 days. Thus, the trial justice, even though endowed with equitable jurisdiction, could not bar the landlord's claim for loss of rents on the basis that the landlord's pursuit of the tenants' eviction was unreasonable.

Admittedly, the principles of collateral estoppel are included within the doctrine of res judicata. *Harding* v. *Carr*, 79 R.I. 32, 39, 83 A.2d 79, 82 (1951). The fact that the affirmative defense of collateral estoppel was not pleaded by the landlord is of no moment. We see no harm to the tenants' rights because, just as soon as Patricia was asked by her counsel about the April rent, an objection was raised on the basis of the District Court judgment. It was obvious then, as it is now, that the landlord was relying upon the judgment entered in the trespass and ejectment action. *See also Air-Lite Products, Inc.* v. *Gilbane Building Co.*, 115 R.I. 410, 422, 347 A.2d 623, 629 (1975).

The last facet of this appeal necessarily involves a consideration of the proviso which tells the tenant the purposes of the security deposit. In its pertinent part this provision reads as follows:

> "SECURITY DEPOSIT — The security deposit paid by you shall be held by us until this agreement is terminated. The full security deposit shall be returned to you within thirty days (30) after you move out except under the following conditions: You agree to allow us to deduct from your security deposit the following charges if they apply: (1) any indebtedness otherwise due to us; (2) unpaid late charges as discussed later; (3) any attorney's fees caused by a breach of any provision of this agreement on your part; (4) any court costs caused by enforcement of the terms and provisions of this agreement * * * *You may not apply the security deposit against rental payments.*"

We must also consider the stipulation entitled "REMEDY FOR BREACH" which reads as follows:

> If for any reason you breach this agreement, we shall

"have the right to initiate any action to evict you from the premises and to collect any damages that shall become due us for this action."

The trial justice ruled that the lease did not require the lessee to pay attorney's fees in the event of a breach. We agree. The lease, insofar as it relates to the attorney's fees, cannot be considered a model of preciseness. When the "Security Deposit" wording is considered alongside the "Remedy For Breach" language concerning "any damages that shall become due us," the lease appears to be saying that the security fund will serve as a source for the partial or full satisfaction of any legal fee for which a court has ruled the tenant was liable. Since the landlord is responsible for the ambiguity, it must suffer the consequences. Thus, in these circumstances the landlord's request for a fee is then faced with the general rule which, in the absence of some specific statutory authority or contractual undertaking, prohibits counsel fees from being taxed as part of the cost of litigation or otherwise. *Malinou* v. *Rhode Island Hospital Trust National Bank*, 116 R.I. 548, 550-51, 359 A.2d 43, 44 (1976); *Waite* v. *Board of Review, Department of Employment Security*, 108 R.I. 177, 178, 273 A.2d 670, 671 (1971); *Washington Trust Co.* v. *Fatone*, 106 R.I. 168, 172, 256 A.2d 490, 493 (1969). Consequently, we will not disturb the trial justice's denial of the landlord's request for an attorney's fee.[3]

The plaintiff's appeal is sustained in part and denied in part, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings, including a recomputation of the rent due the landlord, because it appears that the trial justice has charged the

---

[3]There may be some doubt whether the landlord can raise the fee issue in the light of the District Court's denial of the landlord's request that its attorney be awarded a fee for defending the tenants' motion to vacate. However, we are considering this issue on the assumption that the District Court's denial was based on its belief that it lacked statutory power to award a fee rather than its interpretation of the lease.

tenants for the month of March when in fact that month's rent had already been paid.

*Alfred Thibodeau,* for petitioner.

*Thomas A. Lynch,* for respondent.