Jennifer WALDECK

v.

Richard PINER.

Sharon DiGIULIO

v.

Richard DiGIULIO.

Paulette PELLETIER

v.

Ronald LAWTON.

Nos. 83–394–Appeal, 83–395–Appeal
and 83–502–Appeal.

Supreme Court of Rhode Island.
March 12, 1985.

Michael W. Favicchio, Narragansett, for Dept. of Social & Rehabilitative Services.

John A. MacFadyen 3rd, Eugene F. Toro, Jill S. Votta, Votta & Votta Law Offices, Ltd., Providence, Steven Placella, Pawtucket, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

These are three separate cases that have been consolidated because they present the same issues. In each case suit was brought against the defendant to establish paternity. In each instance, the defendant denied the assertion of paternity. After commencement of suit, each defendant conclusively demonstrated by means of a blood test that he was not the father in question, whereupon defendant in each case brought a motion for assessment of counsel fees. The master granted the motions that were later confirmed, each in turn, by a justice of the Family Court. The plaintiff's appeal.

On appeal, plaintiffs raise these three issues: (1) whether the Family Court has authority to award counsel fees to a defendant in a paternity suit in which the plaintiff has failed to establish paternity; (2) whether the Uniform Paternity Act, G.L. 1956 (1981 Reenactment) chapter 8 of title 15 violates the equal-protection clause of the Federal and Rhode Island Constitutions; (3) and whether the trial justice erred in ordering the State of Rhode Island to pay the counsel fees assessed. In light of our determination of the first issue, we need not address the third.

I

The plaintiffs contend that the Family Court, as a creature of statute, is limited in its authority to the powers bestowed upon it by the statute creating it; and absent express authority to do so, the trial justice was without power to award counsel fees to a defendant who was declared not to be the natural father of the child.

■ The defendants successfully pressed their claims for attorney fees under two separate statutes.[1] The *DiGuilio* attorney-fees award arose from an action for support pursuant to the Uniform Reciprocal Enforcement of Support statute.[2] Section 15–11–15 refers specifically to the award of costs and fees under this act.[3] We observe that there is no language in this section that expressly supports an

---

1. In *DiGiulio* the wife petitioned for family support under the Uniform Reciprocal Enforcement of Support Act for herself and the three minor children of their marriage. The husband claimed not to be the father of the youngest child and sustained his claim with a blood test. He was subsequently awarded the custody of his two minor children. He moved for and was granted an award of attorney fees in the amount of $1,000. In the two other cases, paternity was asserted under the Uniform Paternity Act G.L. 1956 (1981 Reenactment) chapter 8 of title 15. When blood tests excluded paternity, defendants moved for and were granted reasonable attorney fees pursuant to § 15–8–25.

2. G.L. 1956 (1981 Reenactment) chapter 11 of title 15.

3. Section 15–11–15 provides:
"**Costs and fees.**—An initiating court shall not require payment of either a filing fee or other costs from the obligee but may request the responding court to collect fees and costs from the obligor. A responding court shall not require payment of a filing fee or other costs from the obligee but it may direct that all fees and costs requested by the initiating court and incurred in this state when acting as a responding state including fees for filing of pleadings, service of process, seizure of property, stenographic or duplication service, or other service supplied to the obligor, be paid in whole or in part by the obligor or by the department of social and rehabilitative services. These costs or fees do not have priority over amounts due to the obligee."

award of attorney fees. In fact, this court has long held that "costs," without more, will not be interpreted to include counsel fees. *Di Iorio v. Cantone*, 49 R.I. 452, 454, 144 A. 148, 149 (1929). Absent express statutory authority, counsel fees are not awardable as part of the costs of litigation. *R.A. Beaufort & Sons v. Trivisonno*, 121 R.I. 835, 843, 403 A.2d 664, 668 (1979).

■ In the remaining two cases, attorney fees were awarded under the Uniform Paternity Act.[4] The defendants argue that § 15–8–25,[5] which explicitly permits an award of counsel fees upon a finding of paternity, by necessary implication authorizes the assessment of counsel fees in favor of the defendant when he is the prevailing party.

In addressing this question, we note that the Family Court is a statutory court deriving its jurisdiction from G.L. 1956 (1969 Reenactment) § 8–10–3. *Castellucci v. Castellucci*, 116 R.I. 101, 105, 352 A.2d 640, 645 (1976). Its powers are limited to those expressly conferred upon it by statute; its jurisdiction cannot be extended by implication. The Family Court lacks general equitable powers and cannot take action unless specific jurisdictional authority to act can be found in the Family Court Act. *Britt v. Britt*, 119 R.I. 791, 794–95, 383 A.2d 592, 594 (1978).

Section 8–10–3 establishes the jurisdiction of the Family Court, yet it contains no provision to support an award of attorney fees to the prevailing party in a paternity action. The defendants argue, alternatively, that authority to make an award of attorney fees is present by implication in § 15–8–25. As we have stated earlier, the Family Court, as a court of statutory origin, has no more powers than those expressly conferred upon it by the Legislature. Section 15–8–25 provides for an

award of attorney fees in situations in which "the court makes an order declaring paternity." This is not the case before us. No orders issued declaring paternity. Blood tests simply excluded defendants from paternity. Absent express statutory authority to award attorney fees in instances in which the assertion of paternity has been negated, the Family Court is without power to make such an award. In each instance, for the above-stated reasons, the Family Court was without authority to award attorney fees.

## II

■ The defendants' second contention is that the Uniform Paternity Act impermissibly discriminates on the basis of gender in violation of the equal-protection clause of the Fourteenth Amendment because fathers can neither sue to establish paternity nor seek attorney fees under the express terms of the act.

We acknowledge that a classification on the basis of gender that results in the disparate treatment of similarly situated men and women violates the equal protection of the laws unless it is closely tailored to an important government interest. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *reh. denied*, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977). We must therefore examine this statutory scheme to determine whether gender-based distinctions among similarly situated men and women have been made, and if so, whether these distinctions conform closely to an important government interest.

We conclude after reviewing the statute that the purpose of the Uniform Paternity Act is to ensure that fathers support their children born out of wedlock. Section 15–8–2 enables the mother, child, or appropriate public agency to bring a complaint to establish paternity, and upon such determi-

---

4. G.L. 1956 (1981 Reenactment) chapter 8 of title 15.

5. Section 15–8–25 provides:
   "**Costs**—If the court makes an order declaring paternity and for the support and maintenance and education of the child, court costs, including the costs of legal services of the attorney representing the petitioner, expert witness fees, and all other costs shall be taxed against the defendant."

nation a specified support obligation can attach. The unequivocal aim of this statutory scheme is to provide a mechanism to enforce child support-responsibilities. This act must be distinguished from such legislation as the Uniform Parentage Act, adopted in other jurisdictions, that focuses upon paternity rather than support and establishes parental rights upon a finding of paternity.[6] Since the purpose of the Uniform Paternity Act is child support, a determination of paternity is only incidental to this end.[7] *Kendrick v. Everheart*, 390 So.2d 53, 56 (Fla.1980).

The defendants' claim that the paternity act discriminates on its face because fathers cannot sue to establish paternity under the express terms of the act misframes the issue. A father is able to achieve the statutory purpose of the act by acknowledging the child as his own and voluntarily assuming the support obligations that attach to parents. To secure support for her children, the mother often must litigate the paternity issue; whereas the father can simply come forward and honor his support obligations. Explicit in the purpose of the statute—securing child support for children born out of wedlock—is a recognition that men and women are not similarly situated. When a classification of dissimilarly situated men and women is made upon the basis of gender, the equal-protection clause is not offended. *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975).

The plaintiffs' appeals are sustained, the judgments appealed from are reversed, and the cases are remanded to the Family Court for further proceedings consistent with this opinion.

---

**6.** *See, e.g.,* Colo.Rev.Stat. §§ 19–6–101 to 129 (1978).

**7.** While we reject defendants' claims for attorney fees, we note that an assertion of paternity is a serious allegation that, when mistaken, should be susceptible of expeditious, inexpensive rebuttal. The defendant Piner denied paternity from the onset, offering to submit to a

dispositive blood test before litigation commenced. For reasons unknown, S.R.S. disregarded this offer of proof and brought suit. In this instance, litigation wasted time, money, and scarce judicial resources. Yet it is for the Legislature, not for us, to provide an efficient, cost-effective means for alleged fathers to rebut an assertion of paternity.