Kenneth **KEENAN**

v.

George **VOSE.**

No. 93–310–M.P.

Supreme Court of Rhode Island.

Dec. 10, 1993.

Jerry H. Elmer, Licht & Semonoff, Providence, for plaintiff.

Jeffrey Pine, Atty. Gen., James R. Lee, Sp. Asst. Atty. Gen., for defendant.

## OPINION

WEISBERGER, Justice.

This case came before us pursuant to a question certified to this court by a judge of the United States District Court pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure, which authorizes this court to answer questions of law certified to it by inter alia the United States District Court. The certified question is as follows: "Does Rhode Island General Law § 42–56–22 prohibit a person committed to the adult correctional institutions the use of those funds, during the person's incarceration, which are payable only 'at the time of his or her release from the institution' in order to retain an attorney to pursue a collateral post-conviction appeal of his conviction?"

The certified question requires us to construe G.L.1956 (1993 Reenactment) § 42–56–22. The statute reads in its entirety as follows:

"**Labor by persons committed on mesne process or to answer criminal charge.**—(a) Every person who shall be committed to the adult correctional institutions to answer for any criminal offense, whether convicted or awaiting trial, or on mesne process in any qui tam or penal action, or on mesne process or execution in any civil action, may be permitted to labor as aforesaid, in the discretion of the director or his or her designee for the state, and in that case may be paid not more than three dollars ($3.00) a day for every day he or she shall labor with the express consent of the director or his or her designee of the department, to be credited to the prisoner's account by the assistant director of administration or his or her designee and to be disbursed to the prisoner in accordance with rules and regulations of the institutions; provided, further, however, there shall be maintained on account at all times at least twenty-five percent (25%) of the earnings of each prisoner up to a maximum of one hundred dollars ($100) for those persons serving a sentence of life imprisonment without parole under §§ 11–23–2, 12–19.2–1 et seq., and up to a maximum of five hundred dollars ($500) for all other prisoners; those funds to be turned over to the prisoner at the time of his or her release from the institution, the funds being his or her property; the moneys to be paid to the prisoner by order of the assistant director of management services upon the general treasurer.

(b) *Nothing herein shall prevent the use of the funds in the account for the payment of any court fees and court costs required to be paid for the filing, prosecution, and defense of any action.*" (Emphasis added.)

Particular attention should be given to § 42–56–22(b), which has been italicized for emphasis. The specific issue raised by this certified question is whether the authorization set forth in § 42–56–22(b) to use the funds in the account for the payment of any "court fees" and "court costs" would include the use of the funds as attorneys' fees.

Our decisions have consistently held that the term "court costs" without more will not be interpreted to include counsel fees. *Waldeck v. Piner,* 488 A.2d 1218, 1220 (R.I.1985); *Quill Co. v. A.T. Cross, Co.,* 477 A.2d 939, 943 (R.I.1984). *See also R.A. Beaufort & Sons, Inc. v. Trivisonno,* 121 R.I. 835, 843, 403 A.2d 664, 668 (1979); *Malinou v. Rhode Island Hospital Trust National Bank,* 116 R.I.

548, 550–51, 359 A.2d 43, 44 (1976); *Di Iorio v. Cantone,* 49 R.I. 452, 454, 144 A. 148, 149 (1929).

These cases comport with the general rule on the definition of "costs" as set forth in Black's Law Dictionary 346 (6th ed.1990), which sets forth in pertinent part:

> "Generally, 'costs' do not include attorney fees unless such fees are by a statute denominated costs or are by statute allowed to be recovered as costs in the case.
>
> "Fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or court rule; *e.g.* filing and service fees."

Under the facts set forth in the complaint filed in the United States District Court pursuant to 42 U.S.C. § 1983, plaintiff seeks to use the approximate sum of $500, which has been accumulated in his account, in order to pay counsel fees to an attorney in order to secure representation in a collateral attack upon his conviction. His request for the release of such funds was denied by the warden, and this litigation ensued.

It is not the function of this court to determine the constitutional issue raised by the civil rights action pending in the District Court but only to construe the statute. In the event that a statute is unambiguous, it is necessary for this court to apply its terms literally. In such an instance there is no room by way of construction to depart from the plain language of the statute. *O'Neil v. Code Commission for Occupational Safety and Health,* 534 A.2d 606, 608 (R.I.1987); *In re Advisory Opinion to the Governor,* 504 A.2d 456, 459 (R.I.1986); *City of Warwick v. Aptt,* 497 A.2d 721, 724 (R.I.1985).

In our opinion the wording of this statute is plain and unambiguous. In light of our cases and the general rule, the terms "court costs" and "court fees" cannot be deemed to include attorneys' fees. In attempting to construe the legislative intent underlying the prohibition against utilization of this modest sum of $500 for counsel fees, one must consider whether the General Assembly, in enacting this statute sought to limit access to the Rhode Island court system for postcon-

viction relief. We do not believe that this was the intent.

Postconviction remedies in this state are governed by G.L.1956 (1985 Reenactment) chapter 9.1 of title 10. This statute sets forth comprehensive remedies pursuant to which convicted persons may collaterally challenge their conviction on numerous grounds. Although the Federal Constitution does not require the appointment of counsel for indigents in postconviction applications, this statute specifically provides for the provision of counsel without cost. Section 10–9.1–5 provides that an applicant who is indigent is entitled to be represented by the Public Defender, and if the Public Defender is unavailable by reason of conflict or otherwise is unable to provide representation, the court will assign counsel to represent the applicant. It is noteworthy that this section also authorizes expenditure of public funds for certain costs including stenographic and printing costs.

We believe in light of our postconviction-remedy statute that the Rhode Island General Assembly through § 42–56–22(b) was seeking to insulate a prisoner's account from being used to challenge his claim of indigence so that in spite of his or her having such an account, he or she would still be entitled to the benefits of § 10–9.1–5 as an indigent applicant. In the event that this small set-aside account could be used at the discretion of the convicted person, then it might well be argued that it would have to be exhausted before the prisoner would be entitled to the benefit of free counsel for a postconviction application.

This intent seems to be rational. Whether it violates the Federal Constitution is a matter for the United States District Court to determine. We believe that permission to invade the account for filing fees and costs may have been designed to allow the indigent to begin an action or defend an action in a tribunal other than a court of this state. We have no way of determining the full reach of the legislative intent in this respect, but we are unable to rewrite the statute in order to meet the requirements of litigation in such

other tribunals, save to note that the Legislature was attempting to insulate this fund from a challenge to the prisoner's claimed state of indigence.

For the reasons stated, we answer the certified question in the affirmative. The papers in the case may be remanded to the United States District Court for the District of Rhode Island.