DECISION A.
 Facts and Travel
On November 2, 2004, the voters of Rhode Island approved an amendment to the Rhode Island Constitution. For the first time, the legislative, executive and judicial branches of government were "separate and distinct." R.I. Const. art. V.[1]
For many years, the state government had entered into Collective Bargaining Agreements with labor unions. Recent agreements with the separate unions incorporated a master agreement which set the common terms for employees of several unions. When the periodic master agreement expired, the state recommenced negotiations with unions. On September 18, 2005, a new master agreement was executed by Governor Donald Carcieri and Beverly Najarian, the Director of the Department of Administration, [2] on behalf of the state. No evidence was submitted to establish that the contract was executed by or for the Judiciary, or accepted by the judicial branch. The agreement itself does not indicate that the judicial branch assented, or is bound by its terms. *Page 2 
During the period when the previous master agreements were in effect, the state government entered into negotiations to establish a methodology for reducing the state's workforce. In March, 1996, an Arbitration Award was entered resolving the dispute and establishing procedures for layoffs of personnel. While the state attempted to reduce its workforce through attrition for several years, in 2007 it sought to release current employees. The 1996 Arbitration Award[3]
established a system commonly referred to as "bumping," which would now be implemented and utilized. When the state eliminated a position, a union employee who was facing job elimination could "bump" an employee of lower seniority in another position. The senior employee would then take the position of the bumped employee.
In late 2007, Mr. Lepore was "bumped" from his position in the Rhode Island Department of Labor and Training, a department within the executive branch. In time, Mr. Lepore opted to bump Mr. McGovern, an employee in the Workers' Compensation Court. Mr. McGovern is an employee of the Judiciary and the Workers' Compensation Court is part of the judicial branch.
Pursuant to the system of bumping established by the Arbitration Award, the State Personnel Director (in the Rhode Island Department of Administration) approved the replacement of Mr. McGovern by Mr. Lepore. The Judiciary did not participate in the administrative hearing, nor did it review Mr. Lepore's qualifications for his new position (Arbitration Award of July 15, 2008, p. 11). Promptly upon being notified of the approved bump in December, 2007, the State Court Administrator objected on behalf of the Judiciary. The State Court Administrator objected on several grounds: He alleged a violation of the constitutional separation of powers and a deprivation from the Judiciary of its statutory and Constitutional rights to make its own personnel decisions. (Arbitration Award, p. 13). Thereafter, the Judiciary *Page 3 
consistently refused to accept the replacement of Mr. McGovern by Mr. Lepore, or the bumping process. Mr. Lepore and his union then instituted a grievance which resulted in a new arbitration proceeding. When the arbitration hearing commenced, the executive branch failed to appear. The attorney for the judicial branch was left to defend against the grievances, though the Judiciary was not named on the grievance (Arbitration Award, p. 19).
On July 15, 2008, the arbitrator found the grievance was arbitrable and Mr. Lepore had the right to bump Mr. McGovern and move into the position within the Judiciary. The Judiciary promptly moved this Court to vacate the Arbitration Award. The award was stayed by the Court.[4]
 B. Analysis 1. The Dispute Was Not an Issue for Arbitration
The state first contends that the issue was no longer arbitrable at the time of the arbitration, so the "Arbitrator unilaterally rewrote the grievance from an individual grievance and converted it into a class action grievance, and then rendered an `Advisory Opinion' with respect to the rights of Council 94 state classified employees." State's Brief, July 15, 2008, p. 6. As harsh as this criticism may sound, it is not far from the truth. Instead of simply identifying the particular parties, and reciting the issue posed by the written grievance at the outset, the arbitrator commenced the arbitration hearing with an odd monologue. The arbitrator concludes that he will "select a framing based on the suggestions made and the evidence and agreements presented." Arbitration hearing Tr., p. 6 at 11-12. From the start, the issue being arbitrated is *Page 4 
unknown. The arbitrator meandered along his own path. The Judiciary questioned the issue of arbitrability from the start. Tr., p. 8 at 7-8.
Just as befuddling was the identity of the parties to the arbitration proceeding. The grievance was sent to the Department of Administration within the Executive Branch (Mr. Peckham letter of January 9, 2008) with an errant courtesy copy to the Judiciary. The Judiciary, however, had already completely disclaimed its participation in the bumping or arbitration processes, citing judicial independence and separation of powers (see letter of Administrator Baxter to Director Najarian, January 7, 2007). The Judiciary's refusal to accept the bumping of a court employee was communicated to the union (Mr. Bucci letter to Director Najarian, January 4, 2008). As the Judiciary debated the issue with the Department of Administration, the arbitration was scheduled. Apparently the Department of Administration did not appear at the arbitration, and counsel for the Judiciary was left to defend against the grievance.
 No representatives or advocates from DOA were present. In their absence, the attorney for the Judicial Branch served as the representative of the State. His participation in the hearing may not be regarded as a waiver of the Judiciary's right to raise the jurisdictional issues presented. Arbitration Award, p. 19.
Adding more confusion to the chaos, the grievance issue appears to have resolved itself prior to the arbitration hearing: Mr. Lepore still had his position at the Department of Labor and Training. The award acknowledged that no dispute was pending:
 We may also note that while the matter was pending, it appears that the parties (i.e., the Union, DOA, DLT and/or the Judiciary) agreed that both affected employees (Lepore and McGovern) would be retained in their existing position. Thus, it does not appear that grievant Lepore was laid off after the Judiciary rejected his intended bump (nor was he required to take another bump which he might have viewed as less advantageous.) Arbitration Award, p. 19. *Page 5 
Although there was no issue pending to be resolved, the parties to the dispute were unclear, and the issue to be resolved was not yet known, the arbitrator forged ahead undaunted. Instead of resolving controversy, he created it, opting to morph the supposed labor disagreement into a juicy query of constitutional dimension between branches of state government.[5] Simply put, this was not an issue for the arbitrator to resolve. The grievance giving rise to the arbitration had already been resolved, for purposes of arbitration.
In a recent case, our high court provided guidance in determining arbitrability.
 We have held that an arbitrator exceeds his or her powers "by resolving a non-arbitrable dispute." Woonsocket Teachers' Guild, Local 951, A.F.T. v. Woonsocket School Committee, 770 A.2d 834, 837 (R.I. 2001).
 Thus, when examining an Arbitration Award, a "preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." Rhode Island Court Reporters Alliance v. State, 591 A.2d 376, 378 (R.I. 1991) (citing United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 570-71, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960) (Brennan, J., concurring)). Whether that preliminary issue "is arbitrable is a question of law to be reviewed by the [C]ourt de novo." State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d 465, 468 (R.I. 2000) (quoting Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 n. 2 (R.I. 1998)).
 Upon determining that an issue is arbitrable, the Court then must examine the Arbitration Award. We conduct this review deferentially, upholding an award "absent a manifest disregard of a contractual provision or a completely irrational result * * *." Providence Teachers Union v. Providence School Board, 725 A.2d 282, 283 (R.I. 1999) (quoting Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998)). "A manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." North Providence School Committee v. The North Providence Federation of Teachers, Local *Page 6 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008) (citing Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1115 (R.I. 2002)).
 City of Cranston v. Rhode Island Laborers' District Council Local 1033, 960 A.2d 529, 532-533 (R.I. 2008), footnote deleted.
A simple review of the contract language confirms that the alleged dispute is not arbitrable. When an issued award attempts to decide a non-arbitrable dispute, the award must be vacated. G.L. 1956, § 28-9-18(a)(2).
The underlying dispute did not involve an arbitrable issue. The award of the arbitrator should be vacated.
 2. The Need to Consider the Remaining Issues
Even though the issue was not properly before the arbitrator, the arbitrator used the forum to issue an award binding the judicial branch. While the award may be vacated solely on the issue of arbitrability, to do so may allow the remainder of the award to stand as precedent in future labor disputes. As the award binds a party to a contract which it is not party to it, and is contrary to state statute and our Constitution, it is appropriate and necessary for the Court to correct the Arbitrator's inappropriate conclusions of law.
Although this Court is well aware of its obligations to decide the issues before it and venture no further, [6] in very limited circumstances it is appropriate and necessary to *Page 7 
reach the other issues contained in the dispute. There are a variety of factors which convince this Court to do so here: The Arbitration Award would be referenced in other labor disputes as precedent, the issue regarding the separation of judicial employees from the executive is likely to repeat itself, and the award appears to be repugnant to clear constitutional directives.[7]
This Court recognizes that in the ordinary course of events, a court should do only so much as is necessary to resolve the case before it. However, the circumstances of this case present a situation in which the interests of justice call upon this Court to go further. Our state Constitution declares that the rights and principles that it creates "shall be of paramount obligation in all legislative, judicial and executive proceedings." R.I. Const. art. I. It is that "paramount obligation" that calls this Court to redress a Constitutional error in the award. The language of our Constitution and the obligations that it creates are not precatory; they are not illusory; they are not to be changed by the will of any one judicial or quasi-judicial body. Rather, they are "sacredly obligatory upon all" until "changed by an explicit and authentic act of the whole people." R.I. Const. art. I, § 1. Therefore, when this Court recognizes a Constitutional error that might serve to alter the meaning of that sacred document, it finds itself obligated to correct that error — for even when our nation was in its infancy, our founders understood that it would fall upon the judiciary to serve as the "faithful guardians of the Constitution." The Federalist No. 78, at 231 (Alexander Hamilton) (Roy P. Fairfield 2d ed., 1981). *Page 8 
Not only is the issue of the separation of the branches of significant Constitution consequence, but the distinctions among the branches constitute an issue which is likely to present itself again, particularly in labor disputes.[8] Accordingly, it is appropriate for this Court to address the issue.[9]
 3. The Constitutional Separation of the Branches of State Government
In November of 2004, the Rhode Island Constitution was amended. From that time forward, the three branches of state government — the legislative, executive and judicial — were "separate and distinct.[10]The change from the prior constitutional provision was significant. When Rhode Island was established as an English colony in 1663 it received a special charter from King Charles II. In that Charter, the legislature was the central power of colonial government. When the colonies separated from England, Rhode Island did not enact a separate constitution, but organized its government consistent with the principles established by the colonial charter. The Rhode Island legislature was the supreme branch of state government:
 Rhode Island's legislature was endowed by the charter with extraordinary power.
 * * * The most significant feature of Rhode Island's colonial government was the supremacy of the legislature. The General Assembly implemented and expanded the many prerogatives conferred upon it by the charter. Through its vast appointive *Page 9 
power, its activities extended into every facet of Rhode Island life. The legislature was the focal point of government: the executive, the Judiciary, and even the towns were subservient to it. Neither Separate Nor Equal: Legislature and Executive in Rhode Island Constitutional History, Patrick T. Conley, Rhode Island Publications Society, 1999, pp. 7, 9.
Following Rhode Island's Dorr Rebellion, and a move toward populism, Rhode Island adopted a written constitution which became effective in 1843. While the Constitution paved the way for a strong judiciary, it did not result in clear separation between the three branches.[11] The language of the Rhode Island Constitution remained quite different from the Constitution of the United States wherein the powers of the legislature, executive and Judiciary were clearly vested in those distinct branches (U.S. Const. art. I, § 1; art. II, § 1; and art. III, § 1).
The passage of the Constitutional Amendment of 2004, therefore, changed the structure of the most significant components of Rhode Island government. The Rhode Island Supreme Court reviewed the separation of powers article shortly thereafter:
 The doctrine of separation of powers, which is now expressly established in the Rhode Island Constitution, declares that governmental powers at the state level are divided among "three separate and distinct departments." In practice, this doctrine operates to confine legislative powers to the legislature, executive powers to the executive department, and judicial powers to the Judiciary, precluding one branch of the government from usurping the powers of another.FN4 R.I. Const. art. V.
 FN4. This Court has quoted with approval the words of Justice Lewis Powell of the United States Supreme Court: "Functionally, the doctrine [of separation of powers] may be violated in two ways. One branch may interfere impermissibly with the other's performance of its constitutionally assigned function. * * * Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another." City of *Page 10 Pawtucket v. Sundlun, 662 A.2d 40, 58 (R.I. 1995) (quoting I.N.S. v. Chadha, 462 U.S. 919, 963, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983) (Powell, J., concurring)).
 In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council), 961 A.2d 930, 933 (R.I. 2008), footnote 3 deleted.
Pursuant to the shift, the legislature enacted specific statutes to allow the separate branches to control their own affairs. In 2004, the legislature amended G.L. 1956 § 36-4-2.1 to specifically prevent the dismissal of employees of the judicial department from "control in any manner or degree by the personnel administrator; or by any other officer or board of the executive branch of government." In 2004, the legislature also amended G.L. 1956 § 8-15-4 to allow the Judiciary to prepare its own payrolls, control its own appropriations, prepare its own budget (including salaries), and to enact its own rules and regulations to handle its own administrative matters. Not only was the Judiciary considered a separate branch, it was specifically empowered to control its own employees.
G.L. 1956 § 8-15-2 mandates "The chief justice of the supreme court shall be the executive head of the judicial system." It is therefore the Chief Justice, with the assistance of the Court Administrator (G.L. 1956 § 8-15-4), who controls the personnel affairs of the judicial branch. The statutory scheme separates the personnel functions of the judiciary completely. The Judiciary is no longer bound by agreements entered without the Judiciary's consent. Neither the Chief Justice, nor any other representative of the Judiciary, assented to the Master Agreement of 2005. The master agreement does not purport to bind the Judiciary. To bind the Judiciary to an agreement which it did not assent to is as absurd as forcing the Judiciary to participate in an *Page 11 
arbitration in which it was not a party, and had no stake. Hence, Mr. Lepore could not bump Mr. McGovern.
The Judiciary was not bound by the 2005 Master Agreement, nor is it bound to accept the bumping of its employees.
 C. Conclusion
The Arbitration Award of July 15, 2008 is vacated. The dispute was not arbitrable and implementation of the award is contrary to the Rhode Island Constitution.
[1] Prior to this time, the "powers of government" were "distributed into three departments," R.I. Const. art. III, prior to the 2004 amendment. The words `separate and distinct' did not apply.
[2] The Department of Administration is within the executive branch. G.L. 1956 § 42-71-1.
[3] This bumping process was restated in the 2005 Master Agreement in Article 11.7A.
[4] The parties did not schedule a hearing on the motion to confirm for two years, apparently in an effort to resolve the issue through settlement.
[5] As the Arbitration Award itself states, "Obviously, this is a question of legal-statutory interpretation (and, perhaps, constitutional interpretation). This goes beyond my bailiwick — as an interpreter of contracts." Arbitration Award, p. 43.
[6] In Chambers v. Ormiston, 935 A.2d 956 (R.I. 2007), our high court passed upon the thorny issue of whether the Family Court had jurisdiction of a divorce between two spouses of the same sex, married in another state. In discussing the principal of judicial restraint and the proper role of the judicial branch, the Court noted "it is not our role to supplement or amend a statute" and quoted "[O]ur assigned task is simply to interpret the Act, not to redraft it * * *." see generally Dodd v.United States,545 U.S. 353, 359-60, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005).Waldeck v. Piner, 488 A.2d 1218, 1220 (R.I. 1985); but the court also quoted Simeone v. Charron,762 A.2d 442, 448-49 (R.I. 2000) for its holding that "[T]his Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute." Accordingly, the courts will not ignore a statute or constitutional provision where it is necessary to address it to achieve justice.
[7] As of the fiscal year ending June 30, 2010, there were approximately 14,400 positions in the executive branch, and 726 employees in the judicial branch. 2010 Rhode Island State Personnel Supplement, R.I. Department of Administration.
[8] The First Circuit Court of Appeals has held that manifest disregard for the law is a valid basis for review of an arbitration award: "[A] court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food and Commercial WorkersInternational Union, AFL-CIO v. Stop Shop Companies, Inc.,776 F.2d 19, 21 (1st. Cir. 1985).
[9] This Court refrains from discussing the due process issues involved in subjecting an entity to an arbitration without notice to the party required to defend against it, and without notice of the actual subject of the arbitration.
[10] The Court refrains from describing the protracted debate, the lengthy legislative political history, or the details of the cumbersome process to move the proposal through the legislature and the electorate, except to note that the issue was of great concern to the people, while the debate was thoughtful and protracted. However, there is no doubt that the separation is now part of our Constitution and the core of our state government.
[11] See Taylor v. Place, 4 R.I. 324 (1856). For more complete analyses of Rhode Island history on this subject,see Professor Conley's book, supra, and The Dorr War,Republicanism on Trial, 1831-1861, George M. Dennison, The University Press of Kentucky, 1976. *Page 1